THE INHABITANTS OF THE CITY OF TRENTON v. THE STANDARD FIRE INSURANCE COMPANY OF NEW JERSEY. ·

Submitted December 5, 1907—Decided February 24, 1908.

1. In assessing a fire insurance company upon its personal property, a deduction was allowed for exempt and non-taxable securities to an amount exceeding the amount of its reinsurance reserve. *Held,* that in the absence of evidence to the contrary it must be assumed that the reinsurance reserve, if not taxable, is invested in the securities deducted, and that no further deduction should be allowed.
2. Stocks of corporations of other states are not taxable in this state under the Tax act of 1903 (*Pamph. L., p.* 394), when the corporation has within twelve months paid taxes on its property in its own state.

On *certiorari.*

Before Justices SWAYZE and TRENCHARD.

For the prosecutor, *Charles E. Bird.*

For the defendant, *John W. Griggs* and *Huston Dixon.*

The opinion of the court was delivered by

SWAYZE, J. The state board of equalization of taxes set aside an assessment for taxation made against the Standard

Fire Insurance Company, of Trenton, for personal property valued at $245,477.81. Its reason for this action was that the reserve of the company held for reinsurance, which amounted to more than that sum, was not taxable as a part of the capital stock and accumulated surplus.

This view is in conflict with the decision of the Court of Errors and Appeals in *People's Fire Insurance Co.* v. *Parker,* 6 *Vroom* 575, and as the legislature used the same language in this respect in the Tax act of 1903 as had been previously construed in that case, we should suppose that it adopted the construction which had prevailed for more than thirty years. But we think the facts of this case make it unnecessary for us to consider this question.

The insurance company has total assets amounting to $653,760.81. From this the assessors deducted $408,283, being the amount invested in securities exempt from taxation or non-taxable. The amount of the reinsurance reserve is $246,903.05. There is nothing to show that the reinsurance reserve was invested in taxable securities, and it may fairly be, and we think must be, assumed, in the absence of evidence to the contrary, that the reinsurance reserve was actually invested in the very securities which were deducted and not assessed. The reserve, therefore, in fact was not taxed by the assessors, and the judgment of the state board of equalization in allowing this further deduction was erroneous.

This result makes it necessary to pass upon the second question raised by the insurance company. Among its assets were stocks of corporations of other states amounting to $183,921. Taxes had been paid by these corporations upon their real estate and personal property in their respective states within twelve months preceding the 20th of May of the year for which the present assessment is made. The value of these stocks was included in the personal property assessed to the fire insurance company. The question is whether they are taxable under the act of 1903.

That stocks of foreign corporations may be taxed to the holder in this state was held many years ago by this court. *State* v. *Branin,* 3 *Zab.* 484; *State* v. *Bentley, Id.* 532. It

seems to be conceded that there is no objection under the federal constitution. *Kidd* v. *Alabama,* 188 *U. S.* 730. Our courts have held, in the case of stock of a domestic corporation, that to tax the property of the corporation and also the stock in the hands of stockholders would amount to double taxation. *Jersey City Gas Light Co.* v. *Jersey City,* 17 *Vroom* 194. The same reasoning is not applicable, in the strict legal aspect of the case, to a foreign corporation, and that because taxes paid in another state are no taxes at all so far as this state is concerned; but the essential equity of the case is the same, and our legislature evidently thought it unjust that the property of the corporation should be taxed and the certificates of stock representing the shares of the individual stockholders therein should be taxed also. Under the act of 1866, shares of a foreign corporation that had paid taxes on its property in its own state within the twelve months were not taxable in this state. *Smith* v. *Ramsey,* 25 *Id.* 546; *De Baun* v. *Smith,* 26 *Id.* 110. The history of the legislation is set forth and the reasons stated by Mr. Justice Reed in *Darcy* v. *Darcy,* 22 *Id.* 140, 147.

The act of 1866 (*Pamph. L., p.* 1078) was the law governing the matter until 1903. It exempted from taxation "stocks and other personal estate owned by citizens of this state, situate and being out of this state, upon which taxes shall have been actually assessed and paid within twelve months."

The act of 1903 (*Pamph. L., p.* 394) exempts "the personal property owned by citizens or corporations of this state, situate and being out of the state, upon which taxes shall have been actually assessed and paid within twelve months." The only important difference is that the words "the personal property" are substituted for the words "stocks and other personal estate."

The act of 1903 was meant to be a revision and re-enactment of the existing Tax law. We must therefore assume that the purpose was not to change the existing system, except in cases where the intention to do so is clearly specified. *State* v. *Anderson,* 11 *Vroom* 224, 226. It is safe to say that if it had been supposed that the act of 1903 made such a radical

change, affecting probably many millions of property, it would have attracted more attention at the time. There are not wanting indications that the revisers themselves were trying to make the language more concise rather than to change the existing law. Stocks had in this section been classed with "other personal estate," and the use of the word "other" is a clear indication that the legislature regarded stocks, as they could not help regarding them, as included within the descriptions of personal estate. The revisers could hardly avoid the thought that the words "personal property" would include all that had been included under the longer expressions in the act of 1866.

There is another fact which points in the same direction. Section 4 of the act of 1866 undertook to define personal estate, and enacted that it should include goods and chattels, steamboats and vessels, money, debts due from solvent debtors, whether on contract, note, bond, mortgage or book account, public stocks and stocks in corporations, whether said personal estate be within or without this state. The revisers dropped this attempt at definitions and contented themselves with saying that all property, real and personal, within the jurisdiction of the state, not expressly exempted, should be subject to annual taxation. In both sections they evidently thought that the words "personal property" sufficed to express the same meaning as that of the act of 1866.

It might perhaps be questioned whether stocks, the certificates of which are held in this state, are personal property situate and being out of the state, but this language was taken from the act of 1866, and its construction had already been settled by the Supreme Court in the cases above cited. The legislature must be assumed to have used the words with their then settled meaning.

We think therefore the stocks in question were not taxable, and their value should be deducted in computing the taxable value of capital and accumulated surplus. *Newark City Bank* v. *The Assessor*, 1 *Vroom* 13; *Merchants' Insurance Co.* v. *Newark*, 25 *Id.* 138.

The amount of the assessment for personal property other

than bank stock should be reduced from $245,477.81 to $61,-556.81.

The amount of the tax is a mere matter of computation. If counsel cannot agree the court will fix it, upon application for that purpose, in pursuance of section 39 of the Tax act.