## CITY OF WACO v. AMICABLE LIFE INS. CO. (No. 321–3672.) *

(Commission of Appeals of Texas, Section B. Feb. 28, 1923.)

1. **Taxation** ⚎387—**Tax-free government securities not taken into account in estimating total value of insurance company's assets.**

Tax-free government securities cannot be taken into account in estimating the total value of an insurance company's assets under Rev. St. art. 4764.

2. **Taxation** ⚎387—**Reserve of insurance company not asset.**

For the purposes of taxation under Rev. St. art. 4764, a reserve of a life insurance company is not an asset, but a liability; but, if the amount of that reserve is invested in a trust fund, the fund is, of course, an asset, though even in such case the fund is not exempt from taxation unless expressly made so by statute.

3. **Taxation** ⚎387 — **Reserve deducted from gross value of insurance company's property.**

Rev. St. art. 4764, does not exempt any fund or assets of a company from taxation as constituting a reserve fund, but, on the contrary, specifically denominates the reserve a debt, and authorizes a deduction of that debt from the gross value of the company's property.

4. **Municipal corporations** ⚎966(5)—**Mortgage bonds deposited by insurance company with state treasurer taxable in city.**

Mortgage bonds deposited by insurance company with the state treasurer are subject to taxation in the city where the company is domiciled.

5. **Appeal and error** ⚎1082(2) — **Action of Court of Civil Appeals not reviewed unless raised in application for writ of error.**

The Supreme Court is not permitted to review action of the Court of Civil Appeals where the question is not raised in application for writ of error.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by the Amicable Life Insurance Company against the City of Waco. From a judgment of the Court of Civil Appeals (230 S. W. 698) affirming a judgment for the plaintiff, the defendant brings error. Affirmed.

Street, Willis & Coston, of Waco, for plaintiff in eror.

O. L. Stribling, of Waco, for defendant in error.

McCLENDON, P. J. The Amicable Life Insurance Company, a domestic life insurance corporation, domiciled at Waco, McLennan county, Tex., brought this suit against the city of Waco and its taxing officers to cancel an assessment upon its personal property for the year 1919 amounting to $557,600, and to perpetually enjoin the city and its officers from demanding or collecting any part of the tax under said assessment. The district court upon a trial before the court without a jury granted the relief prayed for, and the Court of Civil Appeals affirmed this judgment. 230 S. W. 698.

The assessment complained of was made under R. S. art. 4764, which reads as follows:

"Insurance companies incorporated under the laws of this state shall hereafter be required to render for state, county and municipal taxation all of their real estate as other real estate is rendered; and all of the personal property of such insurance companies shall be valued as other property is valued for assessment in this state in the following manner: From the total valuation of its assets shall be deducted the reserve, being the amount of the debts of insurance companies by reason of their outstanding policies in gross, and from the remainder shall be deducted the assessed value of all real estate owned by the company and the remainder shall be the assessed taxable value of its personal property. Home insurance companies shall not be required to pay any occupation or gross receipt tax."

The findings of the trial court, which are copied in full in opinion of the Court of Civil Appeals, and which are based upon uncontroverted evidence, show the following facts relative to the assets and liabilities of complaining company: The real estate of the company, which consisted of a 22-story office building at Waco, was valued at $926,652.97. The personal property of the company amounted to $2,287,780.26. Its gross assets, real and personal, were $3,214,432.33. Included in its personal assets, and consequently in its gross assets, were United States government bonds and certificates of indebtedness amounting to $906,050, which were admittedly exempt from state taxation under federal laws. The real estate of the company was assessed for taxation in Waco at $589,650. The legal reserve of the company was $1,631,754.06. In order to secure the benefits of R. S. art. 4749, the company some years prior to 1919 had deposited with the State Treasurer assets to the amount of $1,000,000. This was done by conveying to the Treasurer in trust its real estate at a valuation of $882,000, and depositing with the Treasurer $118,000 in mortgage bonds. The trial court held that the tax-free government securities of the company should be deducted from its gross assets, and that the mortgage bonds deposited with the State Treasurer were not subject to taxation by the city of Waco. If these deductions are made, it is manifest that the assessed value of the company's real estate, plus its reserve, exceeded the total value of its assets and left no remainder subject to personal property tax under article 4764. The Court of Civil Appeals did not consider the question

---

⚎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied March 28, 1923.

whether the bonds deposited wtih the State Treasurer were subject to taxation at Waco, but arrived at the same result reached by the trial court by deducting from the gross value of the personal property of the company, less tax-free government securities, the amount of its reserve.

The contentions of the city are, in substance, as follows: That article 4764 literally provides for the total valuation of all the company's assets, which includes its tax-free securities; that the burden of proof was upon the company to show that the reserve was invested in taxable securities, and that, in the absence of such showing, it would be presumed that the property embraced in the assesment was taxable and that the reserve was invested in securities not subject to taxation, and that the deposits at Austin were a part of the total assets of the company, and as such were taxable at Waco.

The finding of the trial court with reference to the reserve of the company is as follows:

"That none of the funds of the company are designated on its books as reserve funds, and that the reserve is a quantity which is constantly changing. That the books of the company are kept on a cash basis, and show all the assets of the company. That at the end of each year the company takes each policy issued and calculates tihe reserve each policy should have, and adds all these sums together, and this constitutes the reserve of the company. That the company's method of keeping books is that usually employed by life insurance companies, and the company carried no account designating its reserve fund other than as above stated. The reserve fund, as stated, is not taken by the company from a special account on the books, but is calculated at the end of each year, and that item is inserted only in one place in the statement the company carries, and issued annually to its policy holders showing its assets and liabilities."

It will thus be seen that the company carried no fund in which the amount of its reserve was invested, but merely treated the reserve as a liability or debt of the company, and its existence was merely a matter of bookkeeping. Our statutes do not define reserve or prescribe any method of its ascertainment, but the term is well understood in insurance parlance, and its ascertainment is a matter of mathcmatical calculation after determining what mortality tables and what rate of interest are to be adopted as bases for the calculation. Webster's International Dictionary gives the following definition, which will serve for our present purpose:

"The amount of funds or assets necessary for a company to have at any given time to enable it, with interest and premiums paid as they shall accrue, to meet all claims on the insurance then in force as they would mature according to the particular mortality table accepted. The reserve is always reckoned as a liability, and is calculated on net premiums. It is theoretically the difference between the present value of the total insurance and the present value of the future premiums on the insurance. The reserve, being an amount for which another company could, theoretically, afford to take over the insurance, is sometimes called the reinsurance fund or the self-insurance fund."

In a number of states the amount of the reserve of life insurance companies is required to be invested in a special fund and held in trust for the policy holders, and, in case of insolvency or dissolution, the property in which this fund is invested cannot be applied to claims of general creditors until the policy holders are satisfied. We have no statute in Texas requiring the setting aside of a reserve fund. Articles 4750 and 4751, which by their terms are made optional, authorize domestic companies to deposit with the insurance commissioner the amount of their reserve either in money or other approved securities, and when so deposited the companies are authorized to print upon their policies the following:

"This policy is registered and approved securities equal in value to the legal reserve hereon are held in trust by the Commissioner of Banking of the state of Texas."

When this statute is complied with the fund cannot be withdrawn so long as there are any outstanding policy liabilities of the company, but it may be increased or diminished in order at all times to be equal to the reserve; and the securities are subject to the control of the company with reference to collection of interest and substitution. Where a company has made a deposit under article 4749, the amount of that deposit may be placed within the reserve fund deposit. The complaining company did not avail itself of articles 4750, 4751.

[1] We have reached the conclusion that the trial court and the Court of Civil Appeals correctly held that tax-free government securities cannot be taken into account in estimating the total value of the company's assets. The fallacy in the contentions of the city arises out of treating the reserve as an asset instead of a liability or debt of the company. It may be conceded that, if our statutes required the investment of the reserve in a trust fund, and exempted that fund from taxation, the securities of the company not so invested would be subject to taxation; and, if the company should fail to provide such trust fund, and all its assets were mingied, it would not be entitled to a deduction for its tax-free securities except to the extent that they might exceed the total amount required to be invested in its reserve fund. But we have no such question presented here. The reserve of a life insurance company is not an asset, but a liability. If the amount of that reserve is invested in a

trust fund, the fund is, of course, an asset. But even in such case the fund is not exempt from taxation unless expressly so made by statute. Attempts have been made in other jurisdictions, where statutes require a special reserve fund to be maintained, to exempt this fund from taxation on the ground that it is in fact the property of the policy holders, and not the property of the company; but this contention has not been maintained. The uniform holding in this regard has been that the fund belongs to the company, although charged primarily with the claims of policy holders, and is subject to taxation as other property. In re Oklahoma Life Ins. Co. (Okl. Sup.) 173 Pac. 376, 13 A. L. R. 174; Commonwealth Life Ins. Co. v. City of Louisville, 145 Ky. 284, 140 S. W. 306, 36 L. R. A. (N. S.) 226, and cases there cited. In some of the states it has been held that the reserve is a debt of the company within the meaning of a general statute which authorizes the offset of debts against taxable credits. Probably the leading case upon this subject is Alabama Gold Life Insurance Co. v. Lott, 54 Ala. 499, decided in 1875. This holding has been followed in other cases. Insurance Co. v. Board of Equalization, 74 Iowa, 178, 37 N. W. 141; Insurance Co. v. Detroit, 133 Mich. 408, 95 N. W. 1131. In some of the states, however, it has been held that the reserve is not allowable as an offset either under the peculiar wording of the statutes of those states or upon the ground that the liability is contingent and not fixed. Inhabitants of Trenton v. Standard Life Ins. Co., 77 N. J. Law, 757, 73 Atl. 606, and cases there cited.

[2] The question whether the reserve shall be treated as a fund in which a designated amount of the company's property is invested, and is therefore an asset, or whether it is a debt or liability, is removed from all doubt in the instant case by the language of article 4764, which provides that:

"From the total valuation of its assets shall be deducted the reserve, being the amount of the debts of insurance companies by reason of their outstanding policies in gross." .

Nothing, to our mind, could be plainer than that for the purposes of taxation the reserve is treated as a debt or liability, and the deduction allowed is not in any sense the removal of any specific part of the assets of the company from taxation. As stated above, the statute does not require the investment of the amount of the reserve, or the setting apart of any of the assets of the company as a trust fund to cover or secure the liability to policy holders represented by the reserve; nor was that procedure actually followed by the complaining company in the present case. Article 4764 does not exempt any fund or assets of the company from taxation as constituting a reserve fund, but on the contrary specifically denominates the reserve a debt, and authorizes a deduction of that debt from the gross value of the company's property.

We also think the statute itself eliminated from the gross assets of the company its tax-free government securities. The statute provides that—

"All of the personal property of such insurance companies shall be valued as other property is valued for assessment in this state."

When we turn to our statutes governing the assessment of personal property we find that owners are required to list their property with the assessor under various headings or items. R. S. art. 7518. Under subdivision 37 of this article it is provided that this list shall contain "amount and value of bonds and stocks other than United States bonds." Thus it will be seen that in the assessment of personal property United States bonds are expressly omitted. They are entirely eliminated from the property, a list of which is furnished to the assessor for purposes of taxation. We think that the above-quoted language of article 4764 to the effect that the personal property shall be valued as other property for assessment in this state has reference not only to the method of fixing the value, but also to the property required to be listed for taxation. An examination of our statutes relating to taxation generally will show that the Legislature has in many instances studiously avoided placing tax-free government securities in the items to be taken into consideration in fixing the value of property in this state for taxation. In article 4764 there is no provision for deduction of government tax-free securities, and, if that article is to be construed as requiring the inclusion of such securities in the gross assets of life insurance companies, clearly the statute would be beyond the power of the Legislature to enact in a case where, after making deductions provided in the statute, the remainder of personal property subject to be taxed must necessarily include tax-free securities. It will not be presumed that the Legislature intended to pass an act beyond its powers, and consequently we think, even in the absence of the above-quoted provision referring to valuation of the personal property as other property is valued for assessment in this state, the requirement that the deductions provided for shall be from the total was intended to mean the total assets subject to taxation by the state, concerning which alone the Legislature had power to legislate. If such were not the intention of the Legislature, we think, clearly, some provision would have been made for deduction of the nontaxable securities at least to the extent that would remove them from the amount necessarily to be included in the value of property assessed for taxation.

We have serious doubt whether the Legislature had the power under the method it adopted for assessing the personal property of the company to take into consideration for any purpose the tax-free government securities. The deduction allowed for the reserve, it is true, was a deduction which the Legislature was not required to make; and in making it, the Legislature had, no doubt, the power to reduce the amount of this deduction by offsetting against it the value of any specific property of the company. In other words, the Legislature had the power to limit the deduction to a particular character of the company's assets. For example, we see no reason why the Legislature could not limit the deduction from the total personal assets of the company to the amount by which the reserve might exceed the real estate of the company. But the statute does not provide for the deduction to be made from any particular character of assets. It is general, and taken from the gross. Under this method the effect of including the tax-free securities in the gross assets necessarily requires the offsetting of those assets against the reserve up to its full amount. It would be impossible, therefore, for the company to obtain the benefit of investing its funds in tax-free securities unless it invested an amount sufficient to cover the reserve and leave a surplus; and in that event it would be benefited by the tax-free character of its securities only to the extent of this surplus. We are strongly inclined to the view that, if the statute be interpreted to require an inclusion of tax-free securities in the gross assets of the company, it would be violative of the United States statutes exempting these securities from taxation.

We are cited in this connection to the above cases of Insurance Co. v. Louisville and Trenton v. Insurance Co. In the Oklahoma case the company sought a deduction of its reserve from its personal property not otherwise taxed on the ground that its reserve was invested in such property, and that the reserve constituted a trust fund which was in fact not an asset of the insurance company, but belonged to the policy holders, and further on the ground that it was entitled to a deduction of the amount of reserve as a debt or liability of the company. The first of these contentions was overruled, the holding being that, regardless of the provisions of the Oklahoma law requiring the investment of the amount of the reserve for the benefit of policy holders, the assets constituting such fund were nevertheless the property of the insurance company, and not of its policy holders. The second contention was overruled upon the distinct holding that there was no provision in the laws of Oklahoma for a deduction from the value of the personal property of debts or liabilities for the purposes of taxation. The concluding paragraph of the opinion is as follows:

"If we had reached the opposite conclusion to that herein announced, and had held that the assets of the corporation to the extent of the reserve were not the property of the corporation, but of the policy holders, *or that the company was entitled to a deduction of the amount of the reserve as a debt or liability*, it is not probable that a substantially different result would have been reached in this case. Having held that the mortgages on which the registration tax was paid were not subject to taxation, the finding would not be authorized that the reserve was invested only in the taxable property, while practically all the capital and surplus was invested in nontaxable property and real estate, and this notwithstanding the testimony that the president was directed to invest the capital and surplus in mortgages exempt from ad valorem taxation. In the absence of evidence that the money actually invested in the nontaxable property and real estate was capital and surplus and not the reserve, it must be assumed that the reserve, to the extent of the value of such property, was invested therein. Trenton v. Standard Fire Ins. Co., 76 N. J. Law, 79, 68 Atl. 1111." (Italics ours.)

This expression of opinion is clearly obiter. But even so we are not prepared to say that it was not correct when applied to that case. If the view had been taken that the assets in the reserve fund belonged to the policy holders, and were therefore not subject to taxation as property of the company, then it would seem clear that, in order to determine what assets were not thus subject to taxation, the specific assets constituting the reserve fund must be definitely ascertained; and, no doubt, in order to secure the exemption the burden would rest upon the company to show that particular property sought to be taxed constituted a part of that fund. The correctness of the views expressed in the quotation with reference to a deduction of the reserve as a debt or liability would depend, we think, upon statutory provisions authorizing such deduction. In the Oklahoma case the assets claimed to be tax-free were not government bonds, but were certain securities which had already been taxed under the state law. To determine whether a deduction should be made from those securities, or entirely from securities which had not been taxed, it would be necessary to have some basis for the deduction. We hardly see how a deduction for liabilities could be affected by the manner in which the assets set aside to meet those liabilities were invested unless the deduction were allowed only from the funds so invested. We do not regard this expression of view by the Oklahoma court as authority at variance with the conclusions we have reached.

The New Jersey case in 76 N. J. Law, 79, 68 Atl. 1111, is probably in point in sustaining the city's contention. That decision was by the Supreme Court of New Jersey, whose

jurisdiction was not final; and the case was later taken to the Court of Errors and Appeals of that state. In that court the decision of the Supreme Court was affirmed on the ground that no deduction was allowable for reserve as a debt, because the liability was not a fixed one, but was merely contingent. This decision was reached without regard to the manner in which the reserve was invested. We have found no other case which seems to have bearing upon this particular question; and we are clear in the view above expressed that for the purposes of taxation under article 4764 the reserve is a liability, and not an asset, and that in determining the total assets of the company no account can be taken of the government tax-free securities.

[3] The contention that the mortgage bonds deposited with the State Treasurer are not subject to taxation in Waco has been decided adversely to the insurance company in the recent case of City of Austin v. Great Southern Life Ins. Co. (Tex. Sup.) 243 S. W. 778.

[4] The Court of Civil Appeals arrived at the conclusion that the insurance company had no taxable personal property by taking the gross amount of the personal assets, less the tax-free securities, and deducting therefrom the reserve. The statute provides that the value of the personal property shall be arrived at as follows:

"From the total valuation of its assets shall be deducted the reserve, * * * and from the remainder shall be deducted the assessed value of all real estate owned by the company, and the remainder shall be the assessed taxable value of its personal property."

The total value of the company's assets were $3,214,432.33. After deducting from this the tax-free securities, the total assets for taxing purposes were $2,308,382.33. By deducting the reserve there is left $776,-628.27; and if from this is deducted the assessed value of the real estate, as the statute provides, there is a remainder of $86,978.27, which according to the statute "shall be the assessed taxable value of its personal property." This is the exact method of ascertaining the value of the personal property prescribed by the statute, and we think it should be followed.

[5] We are not permitted to review this action of the Court of Civil Appeals because the question is not raised in the application for writ of error. Schaff v. Mason, 111 Tex. 388, 235 S. W. 520. We merely call attention to the matter in order that our recommendation as to the disposition of the case may not be interpreted as approving the method of calculation adopted by the Court of Civil Appeals.

We conclude that the judgments of the district court and Court of Civil Appeals should be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

PIERSON, J., not sitting.