## CITY OF GALVESTON v. AMERICAN NAT. INS. CO.   (Nos. 9185, 9186.)

Court of Civil Appeals of Texas.   Galveston. Feb. 13, 1929.

Rehearing Denied March 7, 1929.

Bryan F. Williams and P. A. Drouilhet, both of Galveston, for appellant.

McDonald & Wayman and H. E. Kleinecke, Jr., all of Galveston, for appellee.

GRAVES, J.   These two causes are disposed of together, both being suits brought by the insurance company to enjoin the city of Galveston from seeking the collection of certain sums alleged to have been illegally assessed against its personal property as taxes for the years 1925 to 1927, inclusive, No. 9185 involving those claimed for 1925 and 1926, No. 9186 those for 1927; the city answered in each case with a general demurrer and general denial, adding in No. 9185 a cross-action for the recovery of the then unpaid portion of the assessments made by it for years therein involved, 1925 and 1926.

The trials were before the court without a jury, and, no preliminary writs being sought or issued, resulted in judgments enjoining the city from enforcing the assessments complained of as well as from recovering upon the cross-action referred to, but denying the insurance company any recovery for overpayments it claimed to have made in 1925 by mistake.

The city appeals in both instances, insisting here, as it did below, upon its asserted right to enforce the assessments it made for all three years, while the insurance company, which is a domestic one incorporated under the laws of Texas, having concluded that the claimed overpayment for 1925 was not recoverable because voluntarily made, contends that the judgments were substantially correct and should be affirmed.

The several assessments made by the city and against which the bill for injunction inveighed were: For 1925, $15,034.03; for 1926, $15,314.67; and for 1927, $8,111.94. Of these totals, the appellee had paid $10,926.90 on the $15,034.03 and $6,903.62 on the $15,314.67, so claimed, respectively, for 1925 and 1926, under an agreement between the parties that such credits should not affect the rights of either as to the resulting balance in either instance, thus leaving in dispute between them only the remaining amounts of $4,107.13 for 1925 and $8,411.05 for 1926; for 1927, the entire assessment was challenged, under the appellee's averment that it would have owed nothing for that year, had the deductions to which it was entitled in the process of assessment been made.

This statement from appellant's brief as to how the appellee's renditions and its own subsequent assessments of the same property, the differences between which gave rise to this litigation, were severally arrived at—being, as we think, substantially accurate—is quoted at this point as aiding in the statement of what the appeal involves:

"Both the appellee in making its renditions and appellant in making its assessments in question acted upon statements prepared by appellee showing the nature and amount of its assets on the taxing dates for each of the three years involved, as well as the total amount of its reserves and the value of its real estate as to which appellee furnished statements showing the value placed upon it in the statement of the total assets, as well as the values at which it had been assessed for taxation by the various authorities within whose jurisdiction it was located.

"In seeking to determine the amounts of the assessments which should be made, both appellee and appellant sought to apply the statutory provision which was in force on the taxing dates of each of the years, and which now appears as article 4754, R. S. 1925, reading as follows: 'Insurance companies incorporated under the laws of this State shall hereafter be required to render for

state, county and municipal taxation all of their real estate as other real estate is rendered. All personal property of such insurance companies shall be valued as other property is valued for assessment in this state in the following manner: From the total valuation of its assets shall be deducted the reserve being the amount of the debts of insurance companies by reason of their outstanding policies in gross, and from the remainder shall be deducted the assessed value of all real estate owned by the company and the remainder shall be the assessed taxable value of its personal property. Home insurance companies shall not be required to pay any occupation or gross receipt tax.'

"It was undisputed that for all the years involved the taxing authorities of the appellant city had consciously and deliberately assessed all property at 75 per cent. of what was considered to be its true value. And in making its rendition appellee rendered separately such of its real estate as was subject to taxation ,by the city, and then, to arrive at what it considered and contended to be the proper assessments on its personalty, deducted from its total assets an amount to cover tax-exempt federal bonds, a further amount to cover its reserves, and an amount equal to the total value of all real estate owned by it as valued at what was called its 'book value'—that is, the value at which it had been carried into the lists of assets. 75 per cent. of the remainders thus arrived at was contended by appellee to be the amounts at which its personal property should be assessed.

"Appellant, on the other hand, made the assessments complained of—that is, those for 1925 and 1926—by deducting from the total assets all of the deductions as claimed by appellee, excepting that covering real estate, as to which appellant deducted the total of the values at which it was shown various parcels of real estate had been assessed by the different taxing authorities in whose jurisdiction it lay. And 75 per cent. of the remainders thus arrived at were taken as the proper amounts for which the assessments should be and were made. Thus the difference in the amounts of the assessments made, and those which appellee claimed in its renditions, arise alone from the acts of appellant in deducting each year only the 'assessed value' of appellee's realty, rather than the 'book value' or value at which that realty was carried on appellee's books as assets.

"The question, then, which is presented as to the validity of the assessments for both the years 1925 and 1926, is simply the one as to whether, considering the adopted policy of appellant of assessing all property at 75 per cent. of its value, the assessments made against appellee were illegal to the extent that the latter was allowed a deduction of only an amount equal to the total values which had been placed upon its real property

for the purposes of taxation by various governmental authorities—some of such realty being located in Galveston and the rest of it being scattered throughout the state of Texas and other states, and its total assessed value being considerably ,less than the figures at which it was carried in the lists of assets by the appellee company."

Its additional statement, as affecting 1927 only, should also be quoted, as follows:

"We think it sufficient at this point to say of that assessment: That the allegations show that it was arrived at by deducting from the total assets of the company, exclusive of tax-exempt securities, only the legal reserve amounting to $21,327,229 and a figure of $732,-139 denominated assessed value of real estate, and assessing 75 per cent. of the remainder as personal property subject to tax. And it is in the failure to allow, in addition to this legal reserve, the deduction of the other items of indebtedness claimed by appellee to be owing to it at that time, aggregating $1,716,987, and the deduction of the lesser assessed value of the real estate, instead of the full value thereof, that the invalidity of the assessment for 1927 is claimed to lie."

The appellee also, though by somewhat different manner of statement, arrives at the same general terminus; so that, under the concededly undisputed facts, these situations result:

(1) While all the reserves listed by the appellee in its rendition for those two years were deducted, still, as concretely looked at, the balances of $4,107.13 and $8,411.05, claimed by the city for 1925 and 1926, respectively, simply represent the taxes, at the $2.13 and $2.31 rates levied, on the difference for each of the two years between the book value and the assessed value of the insurance company's real estate as an entirety; if such difference was not properly taxable as personalty under the quoted statute and appellant's fixed policy of taxing only 75 per cent. of the true value of all property, whether real or personal, the company owed no part of either item.

(2) None of the reserves so listed by appellee for 1927, other than its stated legal reserve of $21,327,229, were allowed for that year; had either its remaining $1,716,980 listed as such been deducted, or had the full value of its then held real estate instead of only the assessed value thereof been deducted, it would have owed no taxes on personalty for that year.

■ We agree with the learned trial court that the difference between the book value and assessed value of the real estate was not taxable in the circumstances, and that in all three instances the former instead of the latter should have been deducted in making the assessments. .

The only real estate appellee owned in Galveston during the three years was its home office building, the book and assessment val-

ues of which were: For 1925 and 1926 each, $835,017.61 and $502,556; for 1927, $700,466.-56 and $537,556—the assessment values in each instance being the stipulated 75 per cent. of its true value that the city had separately collected taxes upon it at.

Outside of Galveston—that is, elsewhere in Texas and in two other states—the company owned over the same period real estate, for 1925, of the book value of $252,795—assessed value where taxed of $269,455, for 1926, of the book value of $407,871—assessed value where taxed $54,847, and for 1927, of the book value of $502,029.13—assessed value where taxed $194,583.

We quote with approval so much of appellee's argument on this subject:

"It is necessary that the real estate in the territorial limits of the city be considered separately from that in other states and places in Texas. It is clear that the city cannot tax real or tangible personal property located outside the city. To do so would not only violate the Texas Constitution (section 11 of article 8), requiring property to be assessed in the county where situated, but would, under express holdings of the United States Supreme Court, run counter to the due-process clause of the Federal Constitution. Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 26 S. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493. Able counsel for the city will not contend that the city can directly tax real estate located outside its territorial limits. But has it not indirectly done so? The facts are that in valuing the personal property for the year 1926 there was added $253,024, which is the difference between the true and assessed values of the property located out of the city, and, in valuing the personal property for the year 1927, there was added $307,-446, which is the difference between the true and assessed values of the property located out of the city. It is true there is no direct tax assessed against these amounts as real estate, but they were added to the value of the personal property and used as a basis for calculating and determining the amount of tax thereon. The real effect is that a tax under the guise of personal property is assessed on the difference between the true and assessed value of this property outside the city. The contention of the city is that it can take into account the difference between the true and assessed value of outside real estate, because the city has the right to consider that a part of the reserves are invested in the outside real estate to the extent that it is untaxed. Appellee claims that this outside real estate cannot be considered for any purpose; that it must be eliminated along with United States bonds. Both are tax-free, and neither can be considered.

"The Supreme Court of the United States in two different cases, in effect, decided the question: Frick v. Pennsylvania, 268 U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1058, 42 A. L. R.

816; National Life Ins. Co. v. U. S., 277 U. S. 508, 48 S. Ct. 591, 72 L. Ed. 968.

"These cases, and especially the Frick Case, establish the proposition not only that the city cannot, directly or indirectly, tax property beyond its territorial limits or that is free from taxation, but cannot include the value of such property as a basis for computing or measuring the tax in respect to the property within its power and jurisdiction. The city can no more take into consideration real estate in New Mexico and Oklahoma than it can United States bonds. Neither can enter into the computation in determining what property can be taxed, or the basis for computing the tax on property within its power. The United States Constitution, under the many cases cited in the Frick Case, effectively eliminates the outside real estate from consideration. Both Commissions of Appeals have expressly held that United States bonds cannot be taken into consideration. City of Waco v. Texas Life Ins. Co. (Tex. Com. App.) 248 S. W. 315; City of Waco v. Amicable Life Ins. Co. (Tex. Com. App.) 248 S. W. 332. In the Texas Life Ins. Co. Case, it was said that they should not be taken into account, whether they were in the reserve or out of the reserve. A like holding was made in the Amicable Life Ins. Co. Case. By the same token, outside real estate cannot be considered, because it is clear that the city has no more right to consider real estate outside its jurisdiction than it has to consider United States bonds. The reason in the one case is the reason in the other.

"We now come to consider that part of the real estate located in the city of Galveston. Much that has been said has application to that. It is agreed that the real estate in the city was separately assessed, and the taxes paid thereon for each year at 75 per cent. of its true value.

"The difficulties in the case at bar have arisen because the city failed to apply the statute in keeping with the construction placed on it in City of Waco v. Texas Life Ins. Co., and City of Waco v. Amicable Life Ins. Co., supra. The city has used as the basis for assessment the amount of assets shown in the small, condensed financial statements published by the company on the first of each year. This statement of assets includes United States bonds, real estate outside of Galveston, and, of course, the book value of the home office building. While these statements reflect the value of the company's assets according to approved accounting methods, they should not be used as the basis for a determination of either the value or the items of assets to be taxed. * * *

"The use of this financial statement has also caused the outside real estate to be taken into account, with the result that the difference between the true and assessed value was taxed as personal property. In other words, the city, instead of listing and valu-

ing the assets as is done in ordinary renditions, substituted, or used, the annual statement in which was included assets not required to be listed. It is apparent from arguments and assumptions in appellant's brief that the city contends that, in arriving at the 'total valuation' required to be made, all assets should be included, whatever they are and wherever located. It is assumed, if not argued, that this is the 'total valuation' that should be used before making the deductions the statute provides shall be made 'in the following manner.' There might be some basis for this argument, if the Commission of Appeals had not held otherwise. Able counsel for the city has not cited or referred to City of Waco v. Texas Life Insurance Co. That case, read in connection with the Amicable Life Insurance Company Case prescribes the method used. Both Commissions held that the rendition statutes, showing what property is to be listed and how it is to be valued, should be resorted to; not the small, condensed financial statements of the company. In the Amicable Life Insurance Company Case the court held that United States bonds should be eliminated from consideration, because subdivision 37 of R. S. 7162 provides that the list shall contain 'amount and value of bonds and stocks other than United States bonds.' It was put this way in the opinion: 'When we turn to our statutes governing the assessment of personal property, we find that owners are required to list their property with the assessor under various headings or items. R. S. art. 7518.' This article now is 7162. As we construe the opinion, this is a clear holding that the property should be listed as required by statute. If that is the method, then condensed financial statements of the company should not be used. The other Commission of Appeals, in City of Waco v. Texas Life Ins. Co., not only made the same holding, but went farther and clarified that part of the statute which tends to lend color to the thought that two different values should be put on the real estate for the purpose of valuing the personal property. The court, after quoting that portion of the statute requiring all of the personal property of such insurance companies shall be valued as other property is valued for assessment in this state in the following manner, said:

" 'Then follows the process prescribed for arriving at the taxable value, as shown in the statute quoted. But there can be no "total valuation of its assets" until the personal property shall have been valued. The value of that property cannot be arrived at by the process prescribed after the words "in the following manner." This is true because its value is an element in the "total valuation." Therefore, the personal property must be valued before the process following the words "in the following manner," can begin. In making that valuation the statute says it "shall be valued as other property is valued for assessment in this state." "Valued as other property is valued for assessment" can mean, in this statute, nothing more nor less than valued as the property of other persons is valued for assessment, and the whole expression can mean nothing but "all the personal property of such insurance companies shall be valued as the property of other persons is valued for assessment in this state." Property of other persons is "valued for assessment in this state," not by valuing their property, irrespective of its exempt or nontaxable character, but is valued by placing a valuation upon all property except the exempt and nontaxable property, and by eliminating all such property from such valuation. So, in order to value the personal property of insurance companies as other property, or as property of other persons is valued for assessment, it is necessary that exempt and nontaxable personal property of insurance companies shall not be valued at all for tax purposes. Then it is proper for insurance companies and assessors, in valuing its personal property for assessment to leave out United States bonds, because they are nontaxable.' It is thus made clear that the real estate is to be valued separately from the personal property. R. S. art. 7162 designates what and under what headings property shall be listed for taxation. * * *

"It is obvious that if these decisions had been followed, appellee's home office building should have been listed and valued at 75 per cent. of its true value. Its United States bonds would have been eliminated. And certainly a taxpayer in listing and valuing personal property does not include in, and as part of, that value any portion of his real estate, and especially that in other states or outside the city. Neither would he list any such item as the difference between assessed and market value of real estate. There is no subdivision of article 7162, or any other statute, that contemplates the listing of such an item. Nowhere does any statute in respect to taxation indicate that two different values of real estate are to be used. One value and one listing are all that is required. If two values are used, clearly the real estate is not rendered as other real estate is rendered. And if there is included in the listing of the personalty any such item as the difference between true and assessed value of realty, then clearly personal property is not valued as other property is valued.

"In the Amicable Life Ins. Co. Case the court said: 'We think that the above-quoted language of article 4764 to the effect that the personal property shall be valued as other property for assessment in this state has reference not only to the method of fixing the value, but also to the property required to be listed for taxation.' * * * If all other taxpayers were assessed at full value, appellee could not complain. Since it uses one value in dealing with other people's property, it cannot lawfully use two different values in assessing appellee. The statute, by requiring

real estate to be rendered as other real estate, effectively places the obligation and duty on the city to treat an insurance company just like any other taxpayer in valuing its real estate, and requires this value thus arrived at to be of the items that go to make the 'total valuation' the statute requires. * * *

"The valuation of the property is a separate and distinct thing from making the deductions. The value must be determined before the deductions can be made. The statute requires both kinds of property to be valued as other property. It is clear that equality and uniformity are not accorded to appellee, if there is added to the value of its personal property a part of the value of its real estate. To do this is not to value its property as other property is valued. The effect is to make the company render 75 per cent. of the value of the real estate, and then be assessed in addition, on 75 per cent. of the difference between the true and assessed value. The result is that the real estate is taxed at 93.75 per cent. of its true value, 75 per cent. as real estate and 75 per cent. of the remainder under the guise of personalty. This is not equal and uniform taxation.

"Appellee does not claim it has been denied equality and uniformity in the sense discussed in appellant's brief. No comparison in ultimate results can be made between a life insurance company and an individual taxpayer, because the latter does not have liabilities comparable to the reserve. What appellee urges is that, if the statute means what it certainly says, namely, that an insurance company's real and personal property shall be assessed and valued as like property of other taxpayers, the city has denied to it equality and uniformity. Clearly this is so, because its real estate is taxed at 93.75 per cent. of its value, whether it is in or outside of Galveston."

These conclusions require an affirmance of the judgments, without reference to the question elaborately discussed in the briefs as to whether or not the appellee was entitled to the deduction for 1927 of all or any part of the claimed $1,716,987 over its admittedly deductible legal reserve of $21,327,229, considered either as reserve or as ordinary debts, which is not determined because regarded as unnecessary to the decision.

Affirmed.