**CENTRAL AMERICAN LIFE INSURANCE COMPANY, Appellant,**

v.

**Russell S. HARDIN et al., Appellees.**

**No. 7231.**

Court of Civil Appeals of Texas.

Amarillo.

Feb. 18, 1963.

Rehearing Denied May 6, 1963.

Nelson, McCleskey & Harriger, Lubbock, for appellant.

Cleddie F. Edwards; Campbell, Brock, Wright & Waters, Lubbock, for appellees.

CHAPMAN, Justice.

Appellant, Central American Life Insurance Company, a domestic life insurance company with its home office in the City of Lubbock, Lubbock County, Texas, filed this suit in that county against the county, City of Lubbock and Lubbock Independent School District to set aside all ad valorem tax assessments that had been made upon its personal property, basing its cause of action upon the proposition that all such assessments were and are governed by the formula provided in Article 4.01 of the Insurance Code in Vernon's Texas Civil Statutes and that such assessments were made under a system in conflict therewith. The years involved are 1956 through 1961.

It was stipulated that all procedural steps necessary for a proper contest of the assessments had been made.

The case was tried to the court, which denied the recovery sought by the insurance company and rendered judgment for all taxing units. It is from that judgment appeal is perfected to this court.

Thus, the basic question to be decided is whether the insurance company is authorized by Article 4.01 to deduct its reserve [1] from the total valuation of its assets, *including furniture, fixtures, and automobiles*. (All emphases herein are ours.)

With the exception of the 1957 amendment hereinafter referred to the statutory provisions under consideration have been a part of the insurance statutes of this state since Acts 1909, Ch. 108, entitled "Insurance—Authorizing Incorporation Of Life, Accident, and Health Insurance Companies." Section 25, the applicable section thereof, reads as follows:

"Insurance companies incorporated under the laws of this State shall hereafter be required to render for State, county and municipal taxation all of their real estate as other real estate is rendered and all of the personal property of such insurance companies shall be valued as other property is valued for assessment in this State in the following manner: From the total valuation of its assets shall be deducted the reserve, being the amount of debts of insurance companies by reason of their outstanding policies in gross, and from the remainder shall be deducted the assessed value of all real estate owned by the company and the remainder shall be the assessed taxable value of its personal property. Home insur-

---

1. The obligation or debt of the company by reason of its outstanding policies in gross.

ance companies shall not be required to pay any occupation or gross receipt tax."

Section 25 of Acts 1909 above quoted was brought forward as Article 4764 in the Revised Statutes of 1911, as Article 4754 of the Revised Statutes of 1925, and in Article 4.01 of the Insurance Code, Acts 1951, 52nd Legislature, Chapter 491 in the exact same language and with only minor changes in punctuation. The only substantive change since 1909 was made in the 1957 amendment to Article 4.01 with the following two sentences:

"All real estate, furniture, fixtures, and automobiles owned by any such company shall be rendered for taxation in the city and in the county where such property is located. All other personal property owned by such company shall be rendered for taxation in the city and county where the principal business office of any such company is fixed by its charter."

The provision for valuation of the personal property of domestic life insurance companies for purposes of taxation has been in the statute from the beginning and provides that *all personal property* of such insurance companies shall be valued by deducting the reserve (the amount of the debts of the companies due to their outstanding policies in gross) from the total valuation of its assets, and from the remainder deducting the assessed value of all real estate owned by the company, that remainder then being the assessed taxable value of its personal property.

The term "all personal property", included in Article 3.15 of the Insurance Code before its amendment, was in 1956 held to be all personal property of every character, and not restricted to "intangible personal property." City of Dallas v. Texas Prudential Insurance Co., 156 Tex. 36, 291 S.W.2d 693. That case also held

furniture and fixtures, some of the same type personal property here involved, are included within the meaning of the words, "all personal property." There is a definite analogy to the instant case because of the use of the same phrase in Article 4.01. In construing its predecessor, Article 4764, with respect to the deduction of the reserve from the total valuation of Amicable Life Insurance Company assets, our Sup. Ct.Comm. (opinion adopted) in City of Waco v. Amicable Life Insurance Co., 248 S.W. 332, 335, said:

"But the statute does not provide for the deduction to be made from any particular character of assets. It is general, and taken from the gross."

In construing the same statutory provision in City of Waco v. Texas Life Insurance Co., 248 S.W. 315, 318, our Sup.Ct. Comm. (opinion adopted), said:

"It is observed that the statute prescribes that, after the deductions provided for, 'the remainder shall be the assessed taxable value of its personal property.' This provision is clear, direct, and positive. There is no *exception*, modification, or method of evasion."

Therefore, since the remainder referred to in the statute has consistently been held by such authorities as those just cited to have been arrived at by using the taxable value of *all* personal property of the insurance companies (valued as other property is valued for assessment in this state) [2], *without exception*, we believe it would require us to hold that furniture, fixtures, and automobiles should be included in the total value from which the remainder is computed unless the 1957 amendment changes such rule.

We think it is significant to notice that the 1957 amendment was passed at the first session of the Legislature following

2. City of Galveston v. American National Insurance Co., Tex.Civ.App., 14 S.W.2d 897 (writ refused).

the Supreme Court opinion in Prudential, supra. In that case the court said:

"It is evident by the enactment of Article 3.15, 3.16 and 4.01, supra, that the Legislature intended that all personal property of a domestic life insurance company should be taxed according to a formula based on the difference between the total assets (excluding real estate) and the gross reserves on policies, and that the taxable situs of all personal property of every character and description should be at the home office of the company, and we so hold."

The Prudential case having held that the taxable situs of all personal property of every character and description of a domestic life insurance company should be at the home office of the company the next Legislature added the two sentences to Article 4.01 to make a new rule for the situs of all furniture, fixtures, and automobiles; i. e., that they should be rendered for taxation in the city and county where located, but that all other personal property should be rendered at the principal business office of the company fixed by its charter.

We believe what we have just said is made evident by the entire caption of the 1957 amendment and the emergency clause of the amending act. The caption reads as follows:

"An Act relating to the *situs*, of personal property of domestic insurance companies for the purpose of taxation; amending Articles 3.15, 3.16 and 4.01 of the Insurance Code, so as to place the *situs* of *certain* tangible personal property of all types of insurance companies organized under the laws of this State at the place where such property is located, and to place the situs of all other personal property at the principal place of business of the company; providing an effective date; and declaring an emergency."

The emergency clause of the amending act stated:

"The fact that the present law fixing taxable situs of all personal property of domestic life, health and accident, insurance companies at the home office of the company unjustly deprives other counties and cities in which branch offices are located of the right to tax any personal property of the company creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and this Rule is hereby suspended, and that this Act take effect and be in force from and after January 1, 1958, and it is so enacted." 1957 Texas Session Laws, pp. 812, 814.

As may be seen from the caption, the 1957 act makes no reference whatever to an amendment of the Articles therein mentioned so as to make a change in the method of arriving at the value of personal property of such companies for purposes of state, county, and municipal taxation. The distinction between furniture, fixtures, and automobiles and other personal property in the amendment seems to us to be material only for the purpose of determining the situs or place where such property is taxable and has no relation to the method or formula for valuing personal property of domestic insurance companies different to that provided by the legislatures and approved by the courts for many years. The emergency clause states clearly the reason for the amendment; i. e., in order that counties and cities in which branch offices are located may not be deprived of the right to tax any of the personal property of the companies there located.

The trial court in its conclusions of law and the taxing units' contentions before this court are to the effect that appellees' construction of Article 4.01 was necessary to avoid a violation of the Constitution of Texas, Article 8, Sections 1

and 2, Vernon's Ann.St., requiring equality and uniformity in taxation and specifying exemptions.

As we understand the record, the company *has* rendered and valued its furniture, fixtures and automobiles by including them in the total valuation of its assets from which its reserve is deducted. The validity of such procedure has been approved by our courts for many years. City of Waco v. Texas Life Insurance Co., supra; City of Waco v. Amicable Life Insurance Co., supra; City of Galveston v. American National Insurance Co., supra; Glass v. Great Southern Life Insurance Co., Tex.Civ.App., 170 S.W.2d 247 (refused WM); Bryan v. Central American Life Insurance Co., Tex.Civ.App., 296 S.W.2d 628 (NRE).

Those decisions uphold the validity of the renditions of *all* personal property in the manner rendered by the company in the instant case and claimed by it on this appeal to be a proper method and formula, which permits a deduction of the reserves from the gross. This does not permit an escape of taxation because the reserve is not an asset but a debt. The court in Amicable, supra, stated:

"* * * the reserve is treated as a debt or liability, and the *deduction allowed is not in any sense the removal of any specific part of the assets of the company from taxation. * * * Article 4764 does not exempt any fund or assets of the company from taxation* as constituting a reserve fund, but on the contrary specifically denominates the reserve a debt, and *authorizes a deduction of that debt from the gross value of the company's property.*"

Following the 1925 codification of our statutes and before the adoption of the Insurance Code, Article 5057a constituted in substance what is now the second paragraph of Article 4.01 of the Insurance Code having to do with domestic fire and casualty insurance companies. The constitutionality of the deduction of the reserve for unrendered premiums, authorized by Article 5057a just mentioned and by the second paragraph of Article 4.01, was attacked by the Highland Park Independent School District on essentially the same grounds claimed by appellees herein. The Supreme Court upheld the constitutionality of the statute in the following language:

"The question is not one primarily of exemption of property from taxation, but is the fixing of a standard of valuation of personal property for taxation. In light of the fact that these reserves are required by law for the protection of policyholders, and in reality constitute the very basis upon which the stability and solvency of insurance companies depend, and in view of the further fact that they unquestionably represent a fund held in trust for the protection of policyholders, which fund, potentially at least, may be completely appropriated to payment of liabilities, certainly justify the Legislature in classifying them as deductible indebtedness. The question is not one of lack of power, but purely of the exercise of discretion and judgment on the part of the Legislature." Republic Insurance Co. v. Highland Park Ind. School Dist. of Dallas County, 129 Tex. 55, 102 S.W.2d 184.

In the instant case, as in the case just cited and quoted from, the question involved is not one of exemption from taxation but the arrangement of a standard or formula for the valuation of personal property for taxation. Therefore, we hold the trial court was in error in its interpretation of Article 4.01.

The judgment herein is reversed and rendered and the taxing units are permanently enjoined from the collection of taxes they have asserted to be due against appellant for the years 1956 through 1961. All costs are adjudged against the appellees.