

ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

May 27, 2008

The Honorable Kevin Bailey
Chair, Committee on Urban Affairs
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0630

Re: Eligibility of particular owners to sign a
zoning change protest under section 211.006(d),
Local Government Code (RQ-0654-GA)

Dear Representative Bailey:

You ask the following questions regarding municipal zoning change protests under section 211.006(d), Local Government Code:

> (1) Are all persons who own land immediately adjoining the area covered by a proposed zoning change and extending 200 feet from that area eligible to make a protest under Section 211.006(d)(2), Local Government Code?
>
> (2) More specifically, is [a] city required to count as eligible for a protest under Section 211.006(d) the signatures from landowners in an area that is not in the corporate limits of the city but is annexed for limited purposes by that city?
>
> (3) What about the signatures of owners of land that is not in the corporate limits of the city and is not annexed for limited purposes?[1]

## I.     Factual Background

You explain that your questions arise as the result of a recent zoning change undertaken by the City of Austin ("City"). Request Letter, *supra* note 1, at 1. You tell us that the City, prior to changing the "zoning on a tract of land located at the edge of the [City's] corporate limits[,] . . . gave notice of the proposed zoning change to landowners in at least two neighborhoods adjoining the tract: Westminster Glen and the River Place Municipal Utility District." *Id.* You indicate that

---

[1]*See* Letter from Honorable Kevin Bailey, Chair, Committee on Urban Affairs, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas, at 2 (Dec. 17, 2007) (on file with the Opinion Committee, *also available at* http://www.texasattorneygeneral.gov) [hereinafter Request Letter].

"[l]andowners in Westminster Glen, which was not located in the corporate limits of the [C]ity but was located in an area annexed by the [C]ity for limited purposes, were counted for the purposes of a protest petition under Section 211.006(d)(2)." *Id.* at 1–2. However, "[l]andowners in the River Place MUD neighborhood, which was not located in the corporate limits of the [C]ity and had not been annexed for limited purposes, were not counted by the [C]ity for purposes of the protest petition." *Id.* at 2.

## II.    Analysis

Section 211.006(d), Local Government Code, provides that

> [i]f a proposed change to a regulation or boundary is protested in accordance with this subsection, the proposed change must receive, in order to take effect, the affirmative vote of at least three-fourths of all members of the governing body. The protest must be written and signed by the owners of at least 20 percent of either:
>
> > (1)  the area of the lots or land covered by the proposed change; or
> >
> > (2)  *the area of the lots or land immediately adjoining the area covered by the proposed change and extending 200 feet from that area.*

TEX. LOC. GOV'T CODE ANN. § 211.006(d)(2) (Vernon 2008) (emphasis added).

You ask whether "*all* persons who own land immediately adjoining the area covered by a proposed zoning change and extending 200 feet from that area [are] eligible[2] to make a protest" under section 211.006(d)(2). Request Letter, *supra* note 1, at 2 (emphasis and footnote added). You are specifically interested in discerning whether two categories of landowners are eligible to protest under section 211.006(d)(2): (1) those "in an area that is not in the corporate limits[3] of the city but

---

[2]You ask about "eligibility" to make a zoning protest and for ease of reference we utilize the same term recognizing that it does not precisely characterize the impact of section 211.006(d). Section 211.006(d) does not result in eligibility in the sense that it precludes persons other than those listed in the statute from registering their objections to a proposed zoning change with a city. Rather, as noted in a previous attorney general opinion, section 211.006(d) provides that upon the submission of a written protest meeting the terms of the statute, a proposed change in a regulation or boundary must receive a favorable vote of at least three-fourths of all members of the governing body of the city in order to become effective. *See* TEX. LOC. GOV'T CODE ANN. § 211.006(d) (Vernon 2008); Tex. Att'y Gen. Op. No. JM-1014 (1989) at 2 n.1.

[3]A municipality's boundaries can be described as consisting of three areas: (1) full purpose boundaries, (2) limited purpose boundaries, and (3) extraterritorial jurisdiction area. *See generally* TEX. LOC. GOV'T CODE ANN. title 2, subtitle C (Vernon 2008) ("Municipal Boundaries & Annexation"); *id.* §§ 42.001–.904 (extraterritorial jurisdiction); 43.121 (annexation for limited purposes); 43.127 (annexation for full purposes); *City of Austin v. City of Cedar Park*, 953 S.W.2d 424, 432–33 & n.11 (Tex. App.—Austin 1997, no writ). We understand your use of the term "corporate limits" to mean a city's full purpose boundaries. *See generally* TEX. WATER CODE ANN. § 26.179(c) (Vernon 2008)

(continued...)

is annexed for limited purposes by that city" and (2) those who own "land that is not in the corporate limits of the city and is not annexed for limited purposes." *Id.*

We believe your questions are answered by the court of appeals in *Strong v. City of Grand Prairie*, 679 S.W.2d 767 (Tex. App.—Fort Worth 1984, no writ); *see also* Tex. Att'y Gen. Op. Nos. DM-167 (1992) at 2–3 (discussing *Strong*), JM-1014 (1989) at 3–5 (discussing *Strong*). In *Strong*, the trial court concluded, in relevant part, that

> under art. 1011e [predecessor to section 211.006(d)] *those who are entitled to sign zoning change protests are the same as those entitled to notice by art. 1011f [predecessor to section 211.007(c)]*. Article 1011f requires written notice of all public hearings on proposed zoning changes before the city's zoning commission to owners *"of real property lying within 200 feet of the property* on which the change in classification is proposed . . . *as the ownership appears on the last approved city tax roll."*

*Strong*, 679 S.W.2d at 770 (emphasis added and citation omitted) (quoting language of former article 1011f of the Revised Civil Statutes, now found at Local Government Code section 211.007(c)).

The appellate court found this conclusion of law to be correct, holding that "the intent of the legislature was to permit written protests of proposed zoning changes by the owners of 'real property' lying within 200 feet of the property on which the zoning change is proposed, *which ownership is to be determined from the last approved city tax roll." Id.* (emphasis added); *see* Tex. Loc. Gov't Code Ann. § 211.007(c) (Vernon 2008). Pursuant to the holding in *Strong*, it is only those who own real property within the specified geographic limits and whose ownership is indicated on the most recently approved city tax roll who are eligible to protest under section 211.006(d)(2).

You note that section 211.006(d)(2) does not, by its terms, exclude any particular landowners based on the governmental jurisdiction in which their property is located or the governmental entity to which they pay taxes. Request Letter, *supra* note 1, at 1. And you contend that the facts presented here are different from those in *Strong* in that the properties at issue are "located on the edge of the city" and the properties in *Strong* "were located in the corporate limits of the city." *Id.* at 2. You argue that application of the holding in *Strong* to the property owners at issue here denies the owners "a voice on zoning decisions and ignore[s] the plain and unambiguous application of the statute to all adjacent land." *Id.*

Your arguments appear to grow out of your understanding that the two categories of landowners about which you are concerned are not generally subject to municipal taxation, and thus, will likely be ineligible to protest a zoning change under *Strong's* construction of section

---

[3](...continued)
("extraterritorial jurisdiction [is] outside the full purpose, corporate limits of a municipality"); Joseph W. Geary, et al., *Annual Survey of Tex. Law, Part III: Public Law, Local Gov't Law*, 40 SWLJ 727, 744 (1986) (indicating a 1985 Travis County district court held that "state laws prohibiting services by counties in areas within a city's corporate limits apply only to those areas within a city's full purpose boundaries").

211.006(d)(2), regardless of their land's proximity to a proposed zoning change.[4] *See* TEX. LOC. GOV'T CODE ANN. §§ 42.902 (Vernon 2008) ("The inclusion of an area in the extraterritorial jurisdiction of a municipality does not by itself authorize the municipality to impose a tax in the area."), 43.130(c) ("[A] municipality may not impose a tax on any property in an area annexed for limited purposes or on any resident of the area for an activity occurring in the area."); *City of Galveston v. Am. Nat'l Ins. Co.*, 14 S.W.2d 897, 899 (Tex. Civ. App.—Galveston 1929, writ ref'd) (quoting with approval the appellee's statement that a city cannot tax real property located outside the city); *see also* TEX. LOC. GOV'T CODE ANN. § 43.0751(k) (Vernon 2008) (providing that a city that has annexed all or part of certain special districts for limited purposes under section 43.0751 may impose a sales and use tax within the limited purpose boundaries).

While the application of *Strong* under the facts you present raises a policy concern,[5] it is one for the Legislature to address or for the Texas Supreme Court to consider.[6] The Legislature did, in fact, react to the *Strong* decision by adding the provision now found in section 211.006(e) of the Local Government Code which requires streets and alleys to be included in computing the percentage of land area under section 211.006(d). Act of May 9, 1985, 69th Leg., R.S., ch. 201, § 1, 1985 Tex. Gen. Laws 788, 788–89 (amending article 1011e); TEX. LOC. GOV'T CODE ANN. § 211.006(e) (Vernon 2008). That amendment did not, however, disturb the court's holding concerning a property owner's eligibility to sign a zoning protest. Legislation has subsequently been introduced, but not passed, to respond to the *Strong* holding as to zoning protests. City Letter, *supra* note 4, at 1 (asserting that House Bill 3768 introduced, but not passed, during the last legislative session "would have directly removed the municipal tax roll requirement"); *see also* Tex. H.B. 3768, 80th Leg., R.S. (2007).

"The attorney general's constitutional duty to render legal advice . . . does not include the authority to legislate or to establish binding judicial precedent." Tex. Att'y Gen. Op. No. GA-0279 (2004) at 4. We may advise only about our understanding of the current status of the law. We

---

[4]The City explains that it considered the protests received from the Westminster Glen neighborhood because "[t]he Austin City Council has chosen *in its discretion* to adopt a zoning regulation that grants owners of land annexed for limited purposes the right to file a zoning protest." *See* Letter from Tom Nuckols, Assistant City Attorney, City of Austin, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General, at 2 (Feb. 27, 2008) (on file with the Opinion Committee) [hereinafter City Letter].

[5]We note that owners of such properties may still receive notice of and participate in any public hearing regarding the zoning change. *See* TEX. LOC. GOV'T CODE ANN. § 211.006(a) (Vernon 2008) ("A regulation or boundary is not effective until after a public hearing on the matter at which *parties in interest and citizens have an opportunity to be heard.* Before the 15th day before the date of the hearing, notice of *the time and place of the hearing must be published in an official newspaper or a newspaper of general circulation* in the municipality.") (emphasis added).

[6]A "no writ" notation, such as that in the *Strong* case, denotes that no writ was applied for by the parties in the case and thus, the Texas Supreme Court did not have the opportunity to decide the propriety of the holding by the court of appeals. *See* Hon. Joe Greenhill, UNIFORM CITATIONS FOR BRIEFS: WITH OBSERVATIONS ON THE MEANINGS OF THE STAMPS OR MARKINGS USED IN DENYING WRITS OF ERROR, 27 TEX. B.J. 323, 386-87 (May 1964) (explaining that "[i]f the writ of error table shows that no action was taken on a writ of error (indicating that no writ was applied for), that fact should be shown" by adding the subsequent notations, "no writ," "no writ history," or "no writ hist."); TEX. RULES OF FORM §§ 6.4–.5 (5th ed. 1983) (explaining that "the writ of-error history show[s] the Texas Supreme Court's disposition of a particular case" and "[a] case having no writ history should be cited using the "no writ" notation").

conclude that *Strong* addresses your questions and that a landowner is eligible to protest a proposed zoning change under section 211.006(d)(2), Local Government Code, if the area of the lot or land is within the specified geographic limits and ownership is indicated on the most recently approved city tax roll.

### S U M M A R Y

A landowner is eligible to sign a protest to a proposed zoning change under section 211.006(d)(2), Local Government Code, if the lot or land is within the specified geographic limits and ownership is indicated on the most recently approved city tax roll.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Christy Drake-Adams
Assistant Attorney General, Opinion Committee