**CITY OF WACO et al. v. AMICABLE LIFE INS. CO. (No. 6270.)**

(Court of Civil Appeals of Texas. Austin. April 6, 1921. Rehearing Denied May 11, 1921.)

1. **Taxation** ⬤⟲611(6)—**Legal reserve of insurance company not presumed invested in nontaxable security.**

It is not presumed that the legal reserve of a life insurance company is invested in nontaxable securities; such question being one of fact.

2. **Taxation** ⬤⟲611(6)—**Burden of proof on insurance company in suit to restrain collection to show an illegal assessment.**

In an action by a life insurance company to enjoin city officers from collecting taxes on the ground that exempt property was assessed, burden of proof was upon the company to show that there had been an illegal assessment of its property and that the assessment was upon nontaxable securities as claimed.

3. **Taxation** ⬤⟲7, 608(2)—**Federal law exempting Liberty bonds is paramount and attempted evasion will be enjoined.**

The federal law rendering Liberty bonds and subdivisions of indebtedness exempt from taxation by states and cities is the paramount law, and if there is an impediment to the exercise of the power of the United States in the state Legislature or its administration, the courts will restrain or set aside any attempt to evade.

4. **Taxation** ⬤⟲387—**Liberty bonds held by insurance company not to be included in total assets of company before deduction of reserve.**

In rendering property for taxation under Rev. St. 1911, art. 4764, a life insurance company is entitled to deduct its reserve unconditionally, regardless of whether it includes exempt or unexempt securities, and it is also authorized to exclude exempt securities, such as Liberty bonds, which do not form a part of the reserve.

5. **Taxation** ⬤⟲7—**Statute held to render United States bonds exempt from taxation.**

The effect of U. S. Comp. St. § 6816, providing that obligations of the United States shall be exempt from taxation, is that in any scheme of state or municipal taxation government bonds

---

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

must be eliminated from consideration in any equation to reach the taxable property, or, at least when they are included, it compels a deduction as such for the amount of the bonds.

Appeal from District Court, McLennan County; Richard I. Munroe, Judge.

Action by the Amicable Life Insurance Company against the City of Waco and others. Judgment for plaintiff, and defendants appeal. Affirmed.

E. C. Street, of Waco, for appellants.
O. L. Stribling, of Waco, for appellee.

BRADY, J. The issues in this case are sufficiently indicated by the findings of the trial court, which are as follows:

"That the plaintiff, Amicable Life Insurance Company, is a private corporation incorporated under the laws of the state of Texas for the purpose of writing life insurance as authorized by the laws of Texas, and has its domicile and home office in the city of Waco, McLennan county, Tex., and has been engaged in the life insurance business since 1910.

"(2) That the city of Waco is a municipal corporation incorporated and acting as such under charter adopted under the Acts of the Legislature of 1913, passed in pursuance to the amendment of the Constitution of the state of Texas, commonly known as the Home Rule Amendment, and that the defendant J. A. Loughridge is the assessor and collector of taxes for the city of Waco.

"(3) That on January 1, 1919, the paid-up capital stock of the Amicable Life Insurance Company was $820,000.

"(4) That on January 1, 1919, the Amicable Life Insurance Company owned real estate in the city of Waco, at the corner of Fifth and Austin streets, consisting of a 22-story office building, occupied by it as its home office, and carried on its books as admitted assets at the value of $926,652.97. That this is the only real estate owned by the company in the city of Waco or elsewhere on January 1, 1919.

"(5) That the total assets of the Amicable Life Insurance Company on the 1st day of January, 1919, as shown by its books, amounted to $3,214,432.33.

"(6) That aside from the real estate, the above assets of the company on January 1, 1919, consisted of the following:

| | |
|---|---|
| Mortgage loans | $927,536.81 |
| United States government bonds and certificates of indebtedness | 906,050.00 |
| Cash in banks at interest | 88,762.04 |
| Policy loans within reserve | 211,300.93 |
| Accrued interest | 53,468.91 |
| Premium notes, not included, and deferred payments within reserve | 100,661.57 |

"And that the total value of the personal assets on January 1, 1919, was $2,287,780.26.

"(7) That the legal reserve of the company, being the amount of its debts by reason of its outstanding policies in gross, was on January 1, 1919, $1,631,754.06.

"(8) That on January 1, 1919, the insurance company had on deposit with the treasurer of the state of Texas in the city of Austin $1,000,000, which was represented by its real estate, being the office building in Waco, transferred in trust at the value of $882,000, and mortgage loan notes of the value of $118,000, which deposit was made for the purpose of giving the company the right to advertise such fact or print a copy of the treasurer's receipt of such deposit on the policies it might issue, which deposit had been with state treasurer at Austin for several years prior to January 1, 1919.

"(9) That on January 1, 1918, the legal reserve of the plaintiff company was $1,308,914.31.

"(10) That on January 1, 1918, the plaintiff company owned and held as a part of its personal assets United States bonds and certificates of indebtedness of the value of $142,000.

"(11) That the legal reserve of the plaintiff company was increased during the year 1918 $322,839.75.

"(12) That on January 1, 1918, plaintiff company had on hand as cash in banks $621,361.97.

"(13) That during the year 1918 the plaintiff company purchased United States government bonds and certificates of indebtedness to the amount of $764,050.

"(14) That none of the funds of the company are designated on its books as reserve funds, and that the reserve is a quantity which is constantly changing. That the books of the company are kept on a cash basis, and show all the assets of the company. That at the end of each year the company takes each policy issued and calculates the reserve each policy should have and adds all these sums together, and this constitutes the reserve of the company. That the company's method of keeping books is that usually employed by life insurance companies, and the company carries no account designating its reserve fund other than as above stated. The reserve fund, as stated, is not taken by the company from a special account on the books, but is calculated at the end of each year, and that item is inserted only in one place in the statement the company carries, and issued annually to its policy holders, showing its assets and liabilities.

"(15) The invested assets of the company on January 1, 1918, exclusive of Liberty bonds and cash, amounted to $2,198,578.03 and the invested assets of the company on January 1, 1919, exclusive of Liberty bonds and cash, amounted to $2,219,620.29, showing an increase during the year 1918 in invested assets exclusive of Liberty bonds and cash, of $21,042.26.

"(16) The rentals from the office building in Waco amount to about the sum of $80,000 per annum, which goes into the general fund, and the receipts from loans on real estate, mortgage loans during the year 1918 was approximately $70,000.

"(17) The income from cash premiums during the year 1918 was approximately between $500,000 and $600,000.

"(18) The United States government Liberty bonds and certificates of indebtedness purchased during the years 1917 and 1918 were purchased with cash on hand and in banks, and not from the legal reserve of the company, and such government securities did not constitute any part of the legal reserve of the company as it existed January 1, 1919.

"(19) That the plaintiff company listed and

rendered for assessment and taxation to the city assessor and collector of taxes of the city of Waco, for the year 1919, real estate consisting of its office building in the city of Waco at the value of $582,570, and did not list and render any personal property as being owned by it on January 1, 1919, subject to assessment and taxation by the city of Waco for the year 1919.

"(20) That the board of equalization for the city of Waco did, on or about August 11, 1919, raise the valuation of plaintiff's real estate, and the same was placed on the assessment rolls thereafter for taxation at the valuation of $589,650.

"(21) That the city of Waco, through its taxing officer, on or about August 11, 1919, assessed plaintiff company's personal property for taxation for the year 1919 at the value of $557,600, which was done over the protest and objection of the plaintiff, for the reason that the city was undertaking to tax its government securities.

"(22) That in assessing and determining the value of plaintiff company's personal property subject to assessment and taxation by the city of Waco for the year 1919, the taxing officers did not deduct from the total valuation of the company's assets the United States government bonds and certificates of indebtedness of the value of $906,050, held and owned by the company on January 1, 1919, but included said bonds in the total valuation of its assets, and only deducted therefrom the legal reserve of the company, amounting to $1,631,754.06 and the assessed value of its real estate.

"(23) That if the value of the plaintiff company's United States government Liberty bonds and certificates of indebtedness are deducted from the total valuation of the assets of the company owned January 1, 1919, and then the legal reserve is deducted from the remainder, and from this there is deducted the assessed value of the real estate, the plaintiff company did not own any personal property January 1, 1919, subject to assessment and taxation by the city of Waco for the year 1919.

"(24) That in determining the value of plaintiff company's personal property subject to assessment and taxation by the city of Waco for the year 1919, its taxing officers included the value of the securities on deposit in the city of Austin on January 1, 1919, with the state treasurer, amounting to $118,000, which securities nor any part thereof, did not consist of United States government bonds or certificates of indebtedness.

"(25) That the rate of taxes as fixed by said commissioners of the city of Waco upon all taxable property in the city of Waco for the year 1919 is $2.15 on the $100 valuation, and there is now charged against the plaintiff company on the tax rolls of the city of Waco on personal property at the assessed value of $557,600 taxes amounting in the aggregate on said personal property in the sum of $11,988.40, the payment of which the city of Waco, through the defendant tax collector is demanding of the plaintiff.

"(26) That the plaintiff company did not own on January 1, 1919, any personal property subject to assessment and taxation by the city of Waco for the year 1919.

"Conclusions of Law.

"(1) That under the acts of Congress authorizing the issuance of the Liberty bonds and certificates of indebtedness held by the plaintiff on January 1, 1919, such bonds and certificates are exempt from taxation by the city of Waco, and under the General Statutes of the United States (section 6816, U. S. Statutes), said bonds and certificates were not subject to rendition and assessment for taxes by the city of Waco.

"(2) That the city, through its taxing officers, was not authorized by law in assuming that the United States Liberty bonds and certificates of indebtedness owned by the plaintiff company on January 1, 1919, were a part of its reserve, and that by deducting the reserve from the total value of plaintiff's assets said government securities were not being assessed for taxation by the city of Waco.

"(3) That in rendering its personal property for taxation the plaintiff company was not required to list and render the United States government bonds and certificates of indebtedness owned by it on January 1, 1919, and the value of said securities could not be taken into consideration by the taxing officers of the city of Waco in determining the value of plaintiff company's personal property subject to assessment for taxation, but the value of such securities should have been excluded from the calculation made to determine the amount, if any, at which plaintiff's personal property should be assessed.

"(4) That the assessing of plaintiff company's personal property at $557,600 for taxation for the year 1919 was illegal and wrongful on the part of the city of Waco, for the reason it is shown by the evidence that the plaintiff's Liberty bonds and certificates of indebtedness of the United States were not a part of plaintiff's legal reserve, and were not included in the deduction of the reserve, and that by the assessment as made the city of Waco is necessarily undertaking to tax plaintiff's United States government securities, which in law are exempt.

"(5) That the securities of the plaintiff on deposit with the state treasurer in the city of Austin, Tex., January 1, 1919, of the value of $118,000 were not subject to assessment and taxation by the city of Waco for the year 1919.

"(6) That the plaintiff company is not indebted to the city of Waco in any amount whatever as taxes upon personal property for the year 1919 for the reason that the plaintiff did not own any personal property in the city of Waco on January 1, 1919, subject to taxation by the city.

"(7) That the plaintiff company is entitled to judgment and decree of this court canceling, said assessment as to its personal property and the taxes charged thereon against it, and is further entitled to an injunction perpetually enjoining the city of Waco and its tax collector and his successors in office from ever demanding said taxes or any part thereof from the plaintiff on said personal property, or in any manner attempting to collect said sum of $11,988.40, or any part thereof, or assessing any penalty against the plaintiff company for failure to pay said taxes."

In accordance with the conclusions, the court entered judgment canceling the assessment and perpetually enjoining the city, and its officers from collecting the taxes or any part thereof, and the city has appealed.

## Opinion.

Appellee has objected to the consideration of most of appellant's assignments, upon grounds unnecessary to state, but the objections are regarded as without merit and are overruled.

Before discussing the principal questions presented by the appeal, we will consider certain subordinate points, and state our conclusions thereon.

[1] We overrule the claim of appellants that it must be presumed that the legal reserve of a life insurance company is invested in nontaxable securities. The only authority relied upon to sustain this proposition is the case of Inhabitants of the City of Trenton v. Fire Insurance Co., 76 N. J. Law, 79, 68 Atl. 1111. There is in that case a statement in the opinion of the Supreme Court of New Jersey to the effect claimed by appellants, but the Court of Errors and Appeals, to which the case was later taken, did not pass upon this question, having decided the case on a different ground. The conclusion expressed by the Supreme Court of New Jersey may have rested upon statutory provisions, other than the taxing statute, peculiar to the law of that state. Be this as it may, we see no ground for holding that in Texas the legal reserve of a life insurance company must be presumed to be invested in exempt securities. We are of the opinion that it is a question of fact, and that no legal presumption obtains.

[2] We also overrule similar contentions with relation to the claim that all the property of the company, after allowing the statutory deductions, must be presumed to be subject to taxation, upon the theory that its officers and agents have confused trust funds with other funds of the corporation. We see no room for the application of this rule to the case under the evidence. The testimony shows that the books and accounts of the company were kept according to the method usually pursued by such companies, and there is no contention that the company failed to keep separate accounts of its investments in order to evade the payment of taxes. However, in this contention, it is proper to say that the burden of proof rested upon the appellee, plaintiff below, to show that there had been an illegal assessment of its property. In this proceeding the suit was not for a recovery of the taxes by the city, but was to cancel and restrain an illegal assessment, upon the ground that there was an attempt to tax securities exempt by federal law. In such a proceeding the burden was upon the plaintiff to show that its property was sought to be taxed illegally, and therefore to show that the assessment was upon its nontaxable securities. As to whether appellee met that burden below will be discussed anon.

We also conclude that there is no merit in the assignment complaining of the admission of the opinion of Mr. Wilson, secretary and assistant actuary of the company, to the effect that no part of the Liberty bonds was invested in the reserve, and that when the reserve was deducted from the total assets the bonds were not deducted. This witness qualified sufficiently to express an opinion, and the objection really goes to the weight of his testimony rather than its admissibility.

[3] This brings us to a consideration of the main question in the case. It is contended by appellee that, under the laws of the United States, its Liberty bonds and certificates of indebtedness, amounting to $906,-050, were exempt from taxation by the city, and that in the assessment made by the city there was necessarily an attempt to reach such securities for taxation. If this were true, there could be no question of the illegality of the assessment and attempt to tax such property. The federal law is the paramount law, and, whether the attempt to tax United States bonds was direct or by indirection, it would be futile. The inhibition upon the state and its subdivisions or municipalities cannot be evaded by any form or mode of taxation. If there be an impediment to the exercise of the power of the United States in the state legislation or its administration, that result is forbidden by the superior authority, and the courts will restrain or set aside the attempt to evade. Home Ins. Co. v. State of New York, 134 U. S. 594, 10 Sup. Ct. 593, 33 L. Ed. 1025; Bank v. Des Moines, 205 U. S. 503, 27 Sup. Ct. 571, 51 L. Ed. 901.

[4] It is manifest that the proper solution of this question depends upon the correct interpretation and effect of the Texas statute, and the method pursued by the taxing authorities of the city to reach the personal property of the corporation for taxation. The statute, being article 4764, Revised Statutes of 1911, reads as follows:

"Insurance companies incorporated under the laws of this state shall hereafter be required to render for state, county and municipal taxation all of their real estate as other real estate is rendered; and all of the personal property of such insurance companies shall be valued as other property is valued for assessment in this state in the following manner: From the total valuation of its assets shall be deducted the reserve, being the amount of the debts of insurance companies by reason of their outstanding policies in gross, and from the remainder shall be deducted the assessed value of all real estate owned by the company and the remainder shall be the assessed taxable value of its personal property. Home insur-

ance companies shall not be required to pay any occupation or gross receipt tax."

It will be observed that this statute undertakes to prescribe a standard for ascertaining the value of personal property of life insurance companies different from that applicable to individuals and to other corporations. Ordinarily, under our taxing system, the tax upon personal property is levied and the assessment made directly upon specific property. The question here is whether, under the necessary operation of this statute or by the mode in which the authority was pursued by the city, the federal securities of appellee were sought to be subjected to taxation.

It is the contention of appellee, and the theory seems to have been followed by the trial court, that because of the exempt character of the bonds they could not be considered at all in the computation of the taxable property of the company, and that it was entitled to have such securities eliminated entirely or deducted from the total assets of the company, either in the first instance or after the remainder prescribed by the statute had been ascertained. On the other hand, the city contends that it was competent for the state to prescribe that the exempt securities should be included in the total assets of the company along with its taxable property, and that if a deduction for such securities was in fact allowed, the result was to secure to the company the exemption of its bonds guaranteed by federal laws. In other words, it is claimed for the city that if in the deduction of the amount of the reserve there was a deduction of the amount of the exempt bonds, by reason of the fact that the reserve was invested in such bonds, the taxing of the remainder was not in reality a tax upon the bonds.

The argument of the city is alluring, but it is not believed to be sound. In the first place, we are strongly inclined to the view that, in declaring that the total valuation of the corporation's assets should be first ascertained, the Legislature intended to include only the taxable assets. This for the reason that the Legislature must be presumed to have known that certain property was exempt, both under state and federal laws, and therefore such property could not be reached for taxation, either directly or indirectly. There is at least an apparent incongruity in the inclusion of exempt personal assets, and in the failure to expressly authorize a deduction therefor, in view of their exempt status. In the case of the real estate, there is an express provision for its deduction from the total valuation. There would seem to be no greater reason for deducting the real estate than there would be for the deduction of the value of personal assets exempted from taxation by a state or federal law. This view seemingly is fur-

ther strengthened by the language of the article: "All of the personal property of such insurance companies shall be valued as other property is valued for assessment in this state." In the case of exempt property, there is no valuation of it for assessment purposes under the ordinary system of taxation. Therefore there is much room for the belief that the Legislature did not intend to include exempt property in the total valuation of assets.

If, however, we should be mistaken in the conclusion that the Legislature probably did not intend to include exempt property at all in the computation, we nevertheless think the contention of appellee must be sustained; that when United States bonds are included in the total assets, and by the taxing authorities in attempting to reach the personal property of the corporation, there must be a deduction for the amount of such exempt bonds, and that the burden of showing an illegal assessment has been met by the taxpayer, when the inclusion of its exempt bonds is shown, and the failure to make any deduction or allowance for the bonds, as such. The Legislature has expressly authorized the deduction of the entire amount of the reserve without condition. This allowance has not been made to depend upon how the reserve is invested, or whether the assets it apparently represents be exempt or nonexempt. To uphold the city's contention would require us to virtually amend the law so as to provide that, in case the reserve is invested in or represented by exempt securities, to that extent the deduction of the reserve shall offset the exempt bonds. This we are not permitted to do. The deduction of the reserve authorized by the statute appears to be allowed without regard to how it is invested, or what character of property it represents, and is allowed evidently upon the theory that its amount is not an asset but is a liability. In other words, the Legislature intended this deduction as an allowance for the debts of the corporation, and it is not made to depend upon the investment of such apparent assets, nor upon the influence of exemption statutes. Therefore we think it is immaterial whether the amount of the reserve was in exempt or nonexempt securities.

In the present case, if we eliminate the exempt bonds, in the first instance, and then the legal reserve and the value of the real estate are deducted from the remainder of the property, there would be nothing left, for these three items exceed the total assets of the company. If we should include the exempt bonds in the total valuation, and deduct the amount of the real estate and the amount of the legal reserve without regard to its investment, the remainder would be only $656,025.30 which would be more than offset by the amount of the bonds, which is $906,050. By either process, if we give

full effect to the federal statutes exempting the bonds, there would be nothing left for taxation as personal property; and therefore the entire assessment by the city was illegal and void.

[5] United States Compiled Statutes, § 6816 (R. S. § 3701) reads as follows:

"All stock, bonds, treasury notes, and other obligations of the United States, shall be exempt from taxation by or under state, municipal, or local authority."

The effect of this statute, we think, must be that in any scheme of state or municipal taxation such securities must be eliminated from consideration in any equation to reach the taxable property, or, at least, when they are included, compels a deduction as such, for the amount of the exempt bonds. Fairly construed, we do not think the Texas statute impinges upon the act of Congress, for that it should be construed not to require the exempt securities to be included in the total valuation of assets in the first instance. But if this interpretation be erroneous, we think the fair meaning of the statute is that if after the deduction of the real estate and of the legal reserve, without regard to its investment or what it represents, there remains a sum which is equaled or exceeded by exempt state or federal securities, there is no remainder subject to taxation. If this be not so as to property under state laws, certainly it must be true as to federal securities, because it must be presumed that the Legislature did not intend to violate the superior authority of the laws of the United States.

Under the construction we have given, full effect is accorded both the federal and state laws. The exemption under the one as the paramount authority is secured, and the deductions authorized by the other are allowed, according to the very terms of the statute. The only conflict between our construction and the terms of the state law would appear in the elimination of the exempt bonds, in the first instance, or the offsetting of same against the remainder ascertained under the processes of the statute. The collision, however, is only apparent. The immunity given by the federal law must be respected. When by following the literal terms of the state law there appears to be a remainder expressly declared to be the value of the taxable personal property, this declaration must yield to the power of the United States, even if the Legislature did not so intend. However, we think it is proper to ascribe to our Legislature no motive to offend against the laws of the United States, and that therefore, under any view, the letter of the statute must be restrained, so far as it is necessary to give effect to federal exemption laws.

Believing that the trial court rendered the proper judgment, independently of his conclusions that the government securities did not constitute any part of the legal reserve on the taxing date, and that appellee did not own any personal property in the city of Waco in 1919 subject to taxation by the city, under the undisputed facts in the record, we affirm the judgment.

Affirmed.

KEY, C. J. (concurring). I concur in the affirmance of this case and in the conclusions stated in the opinion prepared by Mr. Justice BRADY, and my only purpose in writing this concurring opinion is to state my construction of article 4764 of the Revised Statutes, which article is copied in Justice BRADY'S opinion.

That statute clearly and distinctly states that in ascertaining the personal property belonging to insurance companies for the purpose of taxation the reserve shall be deducted from the total value of its assets, and it then proceeds to define what the Legislature meant by the term "reserve," as follows: "Being the amount of the debts of insurance companies by reason of their outstanding policies in gross."

Attention is called to the fact that the legislative definition, defining that which should be deducted from the total valuation of assets, does not embrace any fund or property whatever, and includes nothing but debts of a particular kind. A debt is, in no sense whatever, property belonging to the debtor, and therefore it cannot be by him sold or otherwise invested. It may be true that insurance companies and others may designate the liability of such companies to their policy holders as a reserve fund, but as a matter of fact they are mere debts, and constitute no higher claim against the assets of such companies than do the debts of other creditors; therefore, correctly speaking, there is no such thing as a reserve fund of insurance companies upon which policyholders have a superior claim. But be that as it may, in reference to taxation the Legislature has defined what it meant by the use of the term "reserve." That definition includes nothing except debts of insurance companies by reason of their outstanding policies, and such being the case, even if they have certain sums of money set aside as a reserve fund for the purpose of paying such debts, it is the amount of the debts and not the amount of such fund which the statute declares shall be deducted from the gross assets; and therefore is seems plain to me that in this case the insurance company was entitled to deduct its entire indebtedness to policy holders, regardless of how any of its funds may have been invested. In this case, when that and the other deductions authorized by the statute are made, the remainder is less than the amount the insurance company had invested in bonds issued by the federal government, and as they are exempt it had no personal property subject to taxation.

I concur with the trial court and Mr. Justice BRADY that for the purpose of taxation insurance companies have the right to insist that all property exempt from taxation shall be excluded in determining upon what property and at what valuation taxes shall be paid.