**AMERICAN BANK AND TRUST COMPANY, et al., Appellants,**

v.

**DALLAS COUNTY, et al., Appellees.**

No. 20915.

Court of Appeals of Texas, Dallas.

July 23, 1984.

Rehearing Denied Oct. 31, 1984.

Marvin S. Sloman, Brian M. Lidji, Carrington, Coleman, Sloman & Blumenthal, Dallas, for appellants.

Earl Luna, Dallas, for appellees.

Before GUITTARD, C.J., and AKIN and ROWE, JJ.

GUITTARD, Chief Justice.

■ The tax assessments involved in this suit have been declared illegal by the Supreme Court of the United States. *American Bank and Trust Co. v. Dallas County*, 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983). The principal question now presented on remand from that court is whether a taxpayer is entitled to injunctive relief from an illegal assessment without proof that a proper assessment based on true market value would result in a lower tax on the property in question. We hold that even though the illegality results from disregard of a federal statute, the case falls within the settled Texas rule that illegality is not sufficient without proof that a lower tax would be due under a proper assessment, and no such proof is shown in this record. Consequently, we affirm the judgment insofar as it denies injunctive relief, but we modify the judgment by declaring the assessments in question illegal, in accordance with the opinion of the Supreme Court.

This case is one of several pending in this court on remand from the Supreme Court of the United States. All concern the validity of ad valorem assessments of the shares of banking corporations. We had upheld the assessments in *Bank of Texas v. Childs*, 615 S.W.2d 810 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). The Supreme Court reversed on the ground that the formula used in making the assessments is contrary to REV.STAT. § 3701, 31 U.S.C. 742, as amended in 1959, which provides that federal government obligations are exempt from taxation under State or local authority. *American Bank & Trust Co. v. Dallas County*, 103 S.Ct. 3369. By an amendment in 1959, this exemption was extended "to every form of taxation that would require that either the obligation or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax...." Act of Sept. 22, 1959, § 105(a), 73 Stat. 622. The Supreme Court held that the use by the tax assessors of the "equity capital formula" of computing the assessed value is contrary to section 3701 because it takes into account the federal obligations held by the banks. The Court did not hold, however, that the Texas statute imposing the tax on bank shares, former TEX.TAX.–GEN.ANN. art. 7166 (Vernon 1960) is unconstitutional.[1]

■ On remand the taxing authorities contend that the judgments of the trial court upholding the assessments should be affirmed because the record fails to show

---

1. With respect to subsequent years, article 7166 has been superseded by TEX.TAX CODE ANN. §§ 21.09, 22.06, 23.11, 25.14 (Vernon 1982).

that the appellant shareholders were substantially injured by use of the illegal formula as opposed to a proper method of valuation. The shareholders respond that section 3701 forbids any method of computing the assessed value that does not deduct from the value of the shares the proportionate value of the federal securities held by the bank, and, therefore, injury is conclusively established.

We do not agree that substantial injury is shown. The shareholders made no attempt to prove the market value of their shares or what a proper valuation would be after an appropriate deduction for the federal securities held by the banks. Instead, they objected to this evidence when offered by the taxing authorities and relied on their renditions, which were based on book value of the banks' assets—that is, the "equity capital formula"—excluding the value of the federal securities.[2] These renditions were accepted by the tax assessor as to the value of the bank's assets, although, as the Supreme Court has held, the assessors improperly added the value of the federal securities. So far as the present record shows, if the assessors had based their assessments on the true market value rather than book value and had made a proportionate deduction for the value of the federal securities, the taxable value would have been equal to or greater than the assessments under attack. Our question is whether the assessors were bound to accept the book value of the stock as shown by the renditions or whether the shareholders have the burden to show the true value of their shares in order to establish injury entitling them to injunctive relief from an illegal assessment.

We cannot agree that the book value of a bank's assets is a proper method of determining the market value of its shares. The taxing statute, former TEX. TAX–GEN.ANN. art. 7166 (Vernon 1960) provides that bank shares be taxed on their

"actual cash value," but makes no provision as to how that value should be determined. It does not require that assessors use the "equity capital formula," or that the assessment take into account the value of any of the bank's assets, although it does require a specific deduction for the assessed value of the bank's real estate, which is otherwise subject to ad valorem taxation. "Value" as that term is used in article VIII, section 1, of the Texas Constitution and in Texas taxing statutes is uniformly held to mean reasonable cash market value. *Whelan v. State,* 155 Tex. 14, 282 S.W.2d 378, 380 (1955); *Jones v. Hutchinson County,* 615 S.W.2d 927, 931 (Tex.Civ.App.—Amarillo 1981, no writ). This value is the price the property would bring if offered at a free sale on the market. *Polk County v. Tenneco, Inc.,* 554 S.W.2d 918, 921 (Tex.1977); *West Texas Hotel Co. v. City of El Paso,* 83 S.W.2d 772, 775–77 (Tex.Civ.App.—El Paso 1935, writ dism'd). Book value is not a proper measure of taxable value when the evidence shows that it differs from market value. *Polk County,* 554 S.W.2d at 923. Thus the Court of Appeals of Kentucky has held that the book value of stock is an improper measure of fair market value for taxation when better evidence, such as the selling price, is available. *Board of Supervisors v. State National Bank,* 300 Ky. 620, 189 S.W.2d 942, 945 (1945). At most, book value is recognized as only an indication or approximation of true value. *See Stanley v. Board of Supervisors,* 121 U.S. 535, 548–549, 7 S.Ct. 1234, 1238–1239, 30 L.Ed. 1000, 1003 (1887). Intrinsic value likewise is considered a proper basis for valuation only when there is evidence that the property has no market value. *Whelan,* 282 S.W.2d at 381.

Since under these authorities the market value of the shares is the only proper basis for assessment, the shareholders have the burden to prove the market value of their shares in order to establish substantial in-

---

**2.** Although the shareholders failed to plead or prove the market value of their shares, the taxing authorities offered a schedule of market values and testimony supporting it, all of which was excluded on objection. We do not regard this excluded evidence as satisfying the burden to show substantial injury.

jury entitling them to injunctive relief from the illegal assessment. The Texas law on this point is well settled. In *City of Arlington v. Cannon*, 153 Tex. 566, 271 S.W.2d 414, 417 (1954), the trial court issued an injunction restraining the city from collecting a tax because different classes of property were assessed at different percentages of value and certain classes of property were not assessed at all. The Supreme Court of Texas recognized that the board of equalization had not followed the statutory mandates and that its procedures were "wholly unlawful and fundamentally wrong." Nevertheless, the supreme court reversed the injunction on the ground that substantial injury was not shown in that the taxpayers had failed to prove that their property was assessed at a higher percentage of its true market value than other property. Writing for a unanimous court, Justice Calvert stated:

It is now settled, however, that to obtain relief from taxes arrived at through the use of an arbitrary, illegal and fundamentally erroneous plan of valuation, the taxpayer must show substantial injury.

\*    \*    \*    \*    \*    \*

The general plan followed by the board was to assess some classes of personal property at a greater percentage of value than that adopted for real property and at a greater percentage of value than that adopted for other classes of personal property. In so far as relief is sought by the owners of personal property upon the basis that higher percentages were applied to the property of the litigants, only those owners who can establish that their personal property was *actually* assessed at a substantially higher percentage of its market value than that used for other property would be entitled to relief, and then only to the extent of the excess. [Emphasis by the court.]

271 S.W.2d at 417. The supreme court expressly held that the trial court's finding of substantial injury to different classes of taxpayers as a result of the unlawful methods of assessment was not sufficient for injunctive relief:

From what has been said it must be apparent that the injunction cannot stand in favor of the class of plaintiffs in the first category. Where proof of excessiveness or of substantial injury is required as a prerequisite to the granting of relief, that proof must be made as to each taxpayer who seeks relief.

271 S.W.2d at 418.

In support of this holding, Justice Calvert cited with approval *Montgomery County v. Humble Oil & Refining Co.*, 245 S.W.2d 326, 335–36 (Tex.Civ.App.—Beaumont 1951, writ ref'd n.r.e.). In that case uncontradicted evidence established that the plan of taxation adopted by the board of equalization was to assess mineral properties at one-third of market value and other real estate at one-tenth of market value. The trial court granted an injunction, holding that under the evidence there could be no issue of the true market value of the property in question. This holding was reversed and the injunction was dissolved because of the exclusion of evidence offered by the county concerning the true market value. The court of civil appeals held:

When the appellee brought suit in the district court of Montgomery County to enjoin the collection of 1950 taxes from it except upon renditions originally made by it, it *assumed the burden of showing not only an improper or wrongful plan of raising valuations on the part of the Board of Equalization but also that such plan of action had resulted in injury to it. The true market value of its mineral property should have been shown by the appellee itself.* The appellants should have been given the right to make some proof of such value, upon its pleading that the valuation complained of by appellee Humble was actually about ten percent of the true market value. [Emphasis added.]

245 S.W.2d at 336. This holding was specifically approved by the supreme court in *State v. Whittenburg*, 153 Tex. 205, 265

S.W.2d 569, 575 (1954), as well as in *City of Arlington.*

We hold that the same burden to show the true market value exists when the taxing authority has considered an impermissible factor in computing the tax and even though the consideration of that factor is prohibited by federal law. For example, if the assessment were based solely on the value of government obligations, disregarding other bank assets as well as market value of the shares, the assessment would be invalid under the federal exemption statute, regardless of the amount of the government obligations. Nevertheless, the shareholders would have no valid ground to complain because a proper assessment based on market value or on other assets might be many times greater, depending on actual values as shown by the evidence. We find no authority contrary to the general principle applied in the cases above discussed that in order to obtain relief from an illegal assessment, the taxpayer has the burden to show that a proper assessment based on actual market value would result in a lower valuation.

We recognize that the State cannot interpret and apply its own tax laws so as to nullify an exemption from local taxation created by an act of Congress and thus defeat the apparent intent of the Congress to provide a favorable market for federal securities. That intent cannot properly be said to be defeated if the taxpayer has an adequate remedy against the illegal assessment. We conclude that Texas remedies are adequate for relief from any assessment that may be illegal because of the exemption provided by the federal statute. Texas remedies for relief from illegal tax assessments have been held to be "plain, speedy, efficient, and altogether complete" so as to preclude injunctive relief in the federal courts. *City of Houston v. Standard Triumph Motor Co.,* 347 F.2d 194, 199–200 (5th Cir.1965), *cert. denied,* 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466 (1966); *see also, Dawson v. Childs,* 665 F.2d 705, 710 (5th Cir.1982). Under *City of Arlington* and *Montgomery County,* the

shareholders could have offered evidence showing that a proper assessment of their shares based on the statutory standard of "actual" or market value rather than book value, after allowing an appropriate deduction for the federal securities, would be either zero or some figure less than the value at which their shares were actually assessed. Like the taxpayers in *City of Arlington* and *Montgomery County,* they made no attempt to discharge that burden, but relied instead on the illegality of the assessment. Consequently, they have failed to show that they have been denied any substantial rights under the federal exemption statute.

The shareholders contend that their exact injury is shown mathematically in the present record by subtracting the proportionate value of the bank's federal obligations from the assessed value. We cannot agree. This argument assumes that the proper method of assessment is the "equity capital formula" with a deduction of the value of the federal obligations from the net assets of the bank. Since we hold, for reasons already stated, that article 7166 does not mandate application of the "equity capital formula," but requires instead that the shares be assessed at their "actual value," we conclude that the shareholders have the burden to show that their property has been assessed at a higher figure than a proper assessment based on market value less a proper deduction for the federal securities held by the bank.

In this regard the shareholders argue that taxpayers have the burden to show substantial injury only when the challenge to a general tax plan is based on discrimination or inequality, whereas in cases like the present, it is sufficient to show that the tax is illegal and that they are objects of the illegal taxing scheme. We find no authority supporting this contention. Although taxpayers suing for injunctive relief before official certification of the tax rolls may not have the burden to show the precise dollar amount of the increased tax burden placed on them by the illegal assessment, *Atlantic Richfield Co.*

*v. Warren Independent School District,* 453 S.W.2d 190, 198 (Tex.Civ.App.—Beaumont 1970, writ ref'd n.r.e.), they must nonetheless show substantial injury. *City of Arlington v. Cannon,* 153 Tex. 566, 271 S.W.2d 414, 417 (1954). If their claim is that their property is assessed at a higher percentage of its market value than other property, they must show the actual market value of their property because otherwise they have failed to show that their assessments are excessive. *Id.; Montgomery County v. Humble Oil & Refining Co.,* 245 S.W.2d 326, 335–36 (Tex.Civ.App.—Beaumont 1951, writ ref'd n.r.e.), *approved in State v. Whittenburg,* 153 Tex. 205, 265 S.W.2d 569, 575 (1954). Likewise, when a suit is brought to collect the tax, the fact that the taxing authorities have arbitrarily disregarded the true and legal basis of arriving at assessed valuation, does not, of itself, entitle a litigating taxpayer to relief. He must establish the actual market value of his property in order to show that the arbitrary or unlawful plan or scheme of arriving at assessed valuation resulted in substantial injury to him. *Whelan v. State,* 155 Tex. 14, 282 S.W.2d 378, 380–381 (1955).

So far we have assumed that the federal exemption statute, Section 3701, necessarily requires a specific deduction of the proportionate value of the federal securities held by the bank in valuing its shares for taxation under article 7166, regardless of how the assessed value is determined. The taxing authorities contend, however, that the opinion of the Supreme Court deals only with use of the "equity capital formula," which expressly considers the value of federal obligations held by the bank in computing the taxable value of the shares, and that the opinion does not require a specific deduction if the tax is properly computed on the basis of market value of the shares. Consequently, on this ground also, they insist that the shareholders have failed to establish substantial injury.

We agree that this is another reason supporting the trial court's denial of injunctive relief. The issue is one of statutory construction, and, of course, we accept the

Supreme Court's construction of the federal exemption statute. Section 3701 forbids "any form of taxation that would require that either the obligations [of the federal government] or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax." The issue turns on the meaning of "considered." The Supreme Court has authoritatively interpreted this term as follows:

> In context, the word "considered" means taken into account, or included in the accounting [footnote omitted]. The tax at issue was computed by use of an "equity capital formula," which involved determining the amount of the bank's capital assets, subtracting from that figure the bank's liabilities and the assessed value of the bank's real estate, and then dividing the result by the number of shares. 615 S.W.2d at 816. Plainly, such a tax takes into account, at least indirectly, the federal obligations that constitute a part of the bank's assets.

103 S.Ct. at 3374. The court expressly declined to decide whether Texas, by the use of some other method of assessing the shares, could avoid the prohibition of the statute. *Id.* This is the question now raised before us.

■■■ We conclude that when a tax is assessed on the market value of the shares, section 3701 does not necessarily require a specific deduction for federal securities held by the bank. The value of shares of stock has no fixed or necessary relation to the company's assets. *Ray Consolidated Copper Co. v. United States,* 268 U.S. 373, 377, 45 S.Ct. 526, 528, 69 L.Ed. 1003, 1006 (1925). Market value may be determined by many factors such as the experience and ability of the management, general economic prospects in the community, and the selling prices of alternative investments yielding comparable returns with comparable safety. We accept the Supreme Court's holding that in determining market value, section 3701 forbids any computation that takes into account the amount of federal obligations, whether the assessor uses that amount in his own computations or bases

his computation on summary figures supplied by the taxpayers themselves in rendering their property for taxation. *American Bank & Trust Co. v. Dallas County*, 103 S.Ct. at 3374. In the absence, however, of any computation based on the amount of such obligations or the interest on them, the exemption provided by section 3701 does not by its terms apply, and we find nothing in the opinion of the Supreme Court indicating that the exemption must be extended by implication. Such an extension would be contrary to the settled doctrine of that Court that tax exemptions are not granted by implication. *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 156, 93 S.Ct. 1267, 1274, 36 L.Ed.2d 114, 123–124 (1973); *Oklahoma Tax Comm'n v. United States*, 319 U.S. 598, 606, 63 S.Ct. 1284, 1288, 87 L.Ed. 1612, 1618 (1943). Grants of immunity from taxation are in derogation of the sovereign power of the State and are strictly construed. *Pacific Co. v. Johnson*, 285 U.S. 480, 491, 52 S.Ct. 424, 426, 76 L.Ed. 893, 897 (1932). The Court's interpretation in the present case of the statutory phrase "considered, directly or indirectly, in the computation of the tax" is consistent with this rule and is in harmony with other decisions holding that "consider" in a tax exemption statute means use of the questioned factor in making a calculation. *Packard Motor Car Co. v. City of Detroit*, 232 Mich. 245, 205 N.W. 106, 107 (1925); *see City of Davis v. Coleman*, 521 F.2d 661, 679 (9th Cir.1975); *Vialpando v. Shea*, 475 F.2d 731, 733–34 (10th Cir.1973), *aff'd* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974). Consequently, we hold that section 3701 does not require a specific deduction for the proportionate value of the federal obligations held by the bank in valuing the shares of bank stock for taxation under article 7166 so long as the method of assessment does not directly or indirectly involve any computation which takes federal obligations into account mathematically as a factor in determining the value.

We recognize that there may be cases in which the true market value, or "actual value," cannot properly be determined without considering the value of the bank's assets. In such a case, of course, section 3701 would require that the value of the federal securities be excluded from any computation of assets. *Cf. City of Waco v. Amicable Life Insurance Co.*, 230 S.W. 698, 702 (Tex.Civ.App.—Austin 1921), *aff'd*, 248 S.W. 332 (Tex.Comm'n App.1923, judgment adopted) (tax on assets of insurance company, after deducting reserves, must exclude federal obligations). In the present case, however, the shareholders offered no proof that determination of the market value of their shares would necessarily require consideration of the value of the bank's assets, and we cannot take judicial notice that this would be true. Under the authorities already cited, this proof would be necessary to establish substantial injury entitling the taxpayer to injunctive relief.

■ We recognize that on original submission the taxing authorities did not raise the exact questions they now present to us on remand from the Supreme Court of the United States. At that time they contended only that no substantial injury was shown because a reduction in the assessed value of bank shares would require an adjustment of the tax rate with a consequent increase in the taxes on any other property of the taxpayers in the county. We rejected that contention on the ground that the taxpayer need not show that his taxes on some other property would not be raised if his challenge to an illegal assessment should be upheld. The question now presented is whether the shareholders are entitled to declaratory or equitable relief against the assessments in question without proof that a proper method of assessment would result in a reduction of the taxes on the particular shares under consideration, as distinguished from the total taxes on all their property in the county. This question was not raised before us on the original submission of the case. We cannot avoid the question now, however, on the ground that it was not raised earlier because it is now raised on remand from the Supreme Court of the United States and

the case is one in which the public interest is directly and adversely affected, *Ramsey v. Dunlop,* 146 Tex. 196, 205 S.W.2d 979, 983 (1947). The decisions of the Supreme Court of Texas establish that such proof is necessary. Consequently, we affirm the judgment below insofar as it denies injunctive relief.

With respect to the action for declaratory judgment, however, we modify the judgment of the district court and grant the relief sought. Whether a taxpayer is ordinarily entitled to declaratory relief on the ground that a particular taxing plan is illegal without alleging and proving substantial injury is a question we need not consider, since the opinion of the Supreme Court of the United States has the effect of granting that relief in this case. Accordingly, in accordance with that opinion, we modify the judgment below and render judgment declaring that the method of assessment of the bank shares in question by the "equity capital formula," which takes into consideration the value of the bank's assets in computing the taxable value, is illegal to the extent that it considers the value of the government obligations held by the banks along with the bank's other assets in computing the tax. As so modified, the judgment of the trial court is affirmed.

We recognize that this declaratory judgment, without injunctive or other executory relief, leaves the shareholders liable for collection of the tax assessed by the erroneous equity capital method for the years in question. This result necessarily follows from our holding that the shareholders have not discharged their burden to show that they would not have an equal or greater tax liability on their shares under a proper assessment. However, insofar as the trial court's judgment denies injunctive relief it is correct for the reasons stated and must be affirmed, though based on an erroneous ground. *Payne v. Bracken,* 131 Tex. 394, 115 S.W.2d 903, 905 (1938); *First National Bank v. Lone Star Life Insurance Co.,* 524 S.W.2d 525, 531 (Tex.Civ. App.—Dallas 1975), *writ ref'd n.r.e. per curiam,* 529 S.W.2d 67, 68 (Tex.1975); *Ace Drug Marts, Inc. v. Sterling,* 502 S.W.2d 935, 940 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). Our granting of declaratory relief determining the invalidity of the formula will define the duties of tax assessors and will govern any other litigation concerning the assessment of bank shares under article 7166 or similar provisions of the present Tax Code. *See* TEX.TAX CODE ANN. §§ 21.09, 22.06, 23.-11, 25.14 (Vernon 1982). This opinion, as well as the opinion of the Supreme Court, will serve to define the proof necessary for relief from the illegal assessment. Thus tax assessors may not ignore the federal exemption statute. They are obliged to apply it and allow an appropriate deduction whenever they use a plan of assessment which considers federal obligations or the interest on them in the computation of the tax. If they fail to do so, the assessments are subject to the remedies above discussed.

Modified and affirmed.

ROWE, J., dissents.

ROWE, Justice, dissenting.

I agree with that portion of the majority opinion which grants declaratory relief. I cannot agree, however, that the taxpayers have failed to show themselves entitled to injunctive relief thus allowing the taxing authorities to collect the assessments in question in full. Instead, for reasons below given, I would, by injunction if necessary, prohibit the taxing authorities from collecting so much of the assessments made under the "equity capital formula" as were attributable to those federal government obligations declared to be exempt by the Supreme Court of the United States.

The Supreme Court determined that the legislative purpose underlying REV.STAT. section 3701, 31 U.S.C. 742, as amended in 1959, is to prevent state and local taxing authorities from imposing "an intolerable burden on federal obligations by threatening to diminish their value." To insure against imposition of this burden, section

3701 exempts from state and local taxation the value of all federal obligations "considered ... in the computation of the tax." As conceded by the majority opinion, the Supreme Court held that use by tax assessors of the "equity capital formula" for computing the assessed valuation of bank shares *does "consider"* those federal obligations held by banks. The assessments at issue in this appeal were, therefore, made contrary to section 3701 because the federal obligations held by the banks were *not* exempted. The majority opinion appropriately renders a declaratory judgment to such effect.

One necessary implication from the Supreme Court's decision is that because of the undue burden it would impose on protected federal obligations the collection of that portion of the assessments in question attributable to federal obligations is prohibited, and I would expressly so hold. If supplemental relief by way of injunction must be made available to assure this result, as the majority opinion assumes it must, this court has the statutory authority to so provide, TEX.REV.CIV.STAT.ANN. art. 2524–1, § 8 (Vernon 1965). It appears incongruous to me to declare that federal obligations are protected against a certain type of assessment by state and local taxing authorities and at the same time to affirmatively sanction the collection of an assessment of a prohibited type by refusing to grant appropriate injunctive relief.

The majority bases its denial of injunctive relief on the ground that the banks failed to offer any proof that under the appropriate standard for determining value (which standard differs from that actually used) their lawful assessment would be less, citing *City of Arlington, Montgomery County* and similar authorities. None of the cited authorities are in point, however, because none addresses the question here presented concerning the protection of federal obligations. Under circumstances such as these, where protection of federal obligations as well as the interest of Texas taxpayers is at stake, I would hold that the burden of showing an injury substantial enough to authorize injunctive relief is met when the proof establishes, as it does here, that the taxpayers' exempt federal obligations were included in the formula used to fix the assessment sought to be collected. *See City of Waco v. Amicable Life Insurance Company*, 230 S.W. 698, 702 (Tex. Civ.App.—Austin 1921), *affirmed*, 248 S.W. 332 (Tex.Comm'n App.1923, judgment adopted); TEX.TAX CODE ANN. Section 11.12 (Vernon 1982).